# FOR PUBLICATION



FILED

Aug 26 2014, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**WADE R. MEISBERGER**
Carlisle, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE MARRIAGE OF:     )
     )
WADE R. MEISBERGER,     )
     )
     Appellant-Respondent,     )
     )
     vs.     )     No. 39A01-1402-DR-76
     )
MARGARET BISHOP F/K/A MARGARET     )
MEISBERGER,     )
     )
     Appellee-Petitioner.     )

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Jon W. Webster, Special Judge
Cause No. 39C01-0908-DR-529

**August 26, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Wade Meisberger ("Father"), *pro se*, appeals, the trial court's Order on All Pending Issues denying his Motion to Modify Parenting Time, as well as his motion to correct error. Father raises one issue which we revise and restate as whether the court erred in denying his Motion to Modify Parenting Time and motion to correct error. We remand.

FACTS AND PROCEDURAL HISTORY[1]

In the early 1990s, Father was sentenced to forty-eight years in the Department of Correction ("DOC") for convictions of murder and theft occurring in Bloomington, Indiana.[2] See Meisberger v. State, 640 N.E.2d 716, 719 (Ind. Ct. App. 1994), trans. denied. He was placed on probation on September 7, 2007, and shortly thereafter fathered E.M., born on July 31, 2008, to Margaret (Meisberger) Bishop ("Mother"), who he at one point married. On April 21, 2009, Bishop filed a petition for dissolution of her marriage to Father. On November 30, 2009, the court issued a summary decree of dissolution of marriage. On August 4, 2010, the court entered an Order on Agreed Entry for Modification of Custody and Visitation which had been filed by Father. Following a Notice of Intent to Move filed by

---

[1] The underlying facts of this case are limited by the fact that Father did not provide a copy of the transcript from the hearing below for the appellate record. Indeed, Father's brief contains many statements followed by the following citation: "(Tr.   )." See, e.g., Appellant's Brief at 10.

We note that on March 5, 2014, Father filed two motions in this court. First, Father requested leave to proceed in *forma pauperis* pursuant to Ind. Appellate Rule 40; and second, he filed a Motion to Compel Trial Court Clerk to Provide Clerk's Record and Transcript to Appellant and Waiver of All Fees. On April 2, 2014, this court issued an order granting Father's motion to proceed in *forma pauperis* and denying his second motion. The Order stated specifically that "[p]ursuant to Indiana Appellate Rule 40, Appellant may proceed on appeal in *forma pauperis* and is therefore relieved of the obligation to pay the filing fee on appeal." On April 29, 2014, Father filed a Motion to Compel Trial Clerk to File Transcript Pursuant to App. R. 10(G) & App. R. 11(D), and on May 22, 2014, this court issued an order denying Father's motion.

[2] The court's Order on All Pending Issues states that Father was convicted on these charges on May 5, 1993. Appellant's Appendix at 37.

2

Bishop, an Objection filed by Father, and a hearing, the court issued an Agreed Order on October 3, 2011, which gave Father parenting time pursuant to the Indiana Parenting Time Guidelines.

On May 20, 2012, the State field a Petition to Revoke Suspended Sentence against Father alleging that he had violated the terms of his probation by failing to appear for a scheduled meeting with probation officers and to notify the probation department of a change of residence, and on August 6, 2012, the court revoked his probation and ordered that he serve the remainder of his term executed in the DOC. See Meisberger v. State, No. 53A05-1208-CR-452, slip op. at 3-5 (Ind. Ct. App. June 19, 2013), trans. denied. Father's earliest possible release date is July 16, 2021.

The chronological case summary ("CCS"), in an entry dated August 1, 2013, indicates that Father sent a letter to the court, requested an order for transport and filed a "Motion to Set Hearing," and an entry dated August 13, 2013 notes that the court received a second letter from Father. Appellant's Appendix at 8. In an entry dated August 15, 2013, the CCS indicates that the court issued an Order Denying Request for Order of Visitation and Request for Transport, and on August 30, 2013, Father filed a *pro se* motion to correct error and memorandum of law in support of the motion. The court, on October 3, 2013, denied Father's motion to correct error, and on October 9, 2013, Father filed a *pro se* Motion to Modify Parenting Time and Set Hearing and a memorandum of law in support. The court issued an order setting a hearing on Father's motion and scheduled transport, and a hearing

3

was held on December 10, 2013, in which both parties appeared *pro se*.[3] On January 9, 2014, the court issued its Order on All Pending Issues (the "Order") which contained findings consistent with the foregoing and further stated as follows:

> [Mother] and [Father] both appear in person, but without counsel, for hearing on December 10, 2013 (in Vernon) on the following pending issues:
>
> o Notice of Change of Circumstances and Request for Order of Visitation filed by [Father] on or about July 25, 2013;[4] and
> o Motion to Modify Parenting Time and Set hearing filed by [Father] on October 9, 2013
>
> and this Court, having heard and seen evidence, now finds as follows:
>
> * * * * *
>
> 3. After [E.M.'s] birth on July 31, 2008, [Father] and [Mother] lived together as husband and wife until the Verified Petition for Dissolution of Marriage was filed on August 21, 2009. For approximately the next year, [Father] was in and out of [E.M.'s] young life.
>
> 4. [Mother] is now living in Hanover. She is the custodial parent.
>
> 5. [Mother] allows [Father's] parents to exercise grandparent time with [E.M.] and they have a good relationship with him and her.
>
> * * * * *
>
> 7. [Mother] is opposed to parenting time at [the DOC], is opposed to transporting [E.M.] there, and indicates [Father's] parents do not want to transport the child either. His parents were present for this hearing.
>
> * * * * *
>
> 9. Of [E.M.'s] five (5) years of life, [Father] has been a consistent part

---

[3] Again, a transcript of this hearing is not contained in the record.

[4] We note that the Notice of Change of Circumstances and Request for Order of Visitation is not mentioned in the CCS and is not contained in the record.

of it for only one (1) year and, thus, it is not in his best interest to have in person parenting time within the confines of a prison facility.

10. However, [Father] may send mail to his son via his parents who are authorized to "screen" it before turning it over to [Mother]. . . .

11. [Father] may also telephone his son, at his expense, while [E.M.] is visiting his paternal grandparents, but the grandparents must screen and monitor the calls. . . . Calls made by [Father] shall be limited to seven (7) minutes.

12. [Mother] shall provide a yearly school picture to [Father].

Id. at 37-39. Father filed a motion to correct error which was denied on January 24, 2014.

DISCUSSION

Before addressing Father's arguments, we note that although he is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. This court will not "indulge in any benevolent presumptions on [his] behalf, or waive any rule for the orderly and proper conduct of [his] appeal." Ankeny v. Governor of State of Ind., 916 N.E.2d 678, 689 (Ind. Ct. App. 2009) (citation omitted), reh'g denied, trans. denied.

We also note that Mother did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes prima facie error. Zoller v. Zoller, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. Wright v. Wright, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002). Questions of law are still reviewed *de*

*novo*, however. McClure v. Cooper, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

The issue is whether the court erred in denying Father's Motion to Modify Parenting Time and motion to correct error. A decision about parenting time requires us to give foremost consideration to the best interests of the child. Perkinson v. Perkinson, 989 N.E.2d 758, 761 (Ind. 2013). Generally, parenting time decisions are reviewed for an abuse of discretion. Id. If the record reveals a rational basis for the trial court's determination, there is no abuse of discretion. In re Paternity of G.R.G., 829 N.E.2d 114, 122 (Ind. Ct. App. 2005). We will not reweigh evidence or reassess the credibility of witnesses. Id. We review a trial court's denial of a motion to correct error for an abuse of discretion, reversing only where the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs as a matter of law. Perkinson, 989 N.E.2d at 761.

Father argues that "the right of non-custodial parents to visit with their children is a 'sacred and precious privilege'" and is "statutorily protected." Appellant's Brief at 16. He argues that here he had been granted visitation rights pursuant to the Guidelines, was precluded from exercising those rights by incarceration, and the court in ruling on his motion did not consider the relevant factors in Ind. Code § 31-17-4-2, instead "only writing, '…*it is not in his best interest to have in person parenting time within the confines of a prison facility*.'" Id. at 15. He argues that "[b]ecause there was no evidence that from the date of the divorce [Father] posed a threat of any kind to either [the] child's physical or emotional health, the ruling terminating visitation was an abuse of discretion . . . ." Id. at 18. Father

6

asserts that the court's determination that he may speak with E.M. by telephone for seven minutes under the supervision of grandparents, that he may write E.M. but that such letters must be screened by grandparents, and that Mother shall send Father a school picture of E.M. annually, "border[s] on controlling intervention of the state" and "is not supported by *any* evidence whatsoever for the trial court to support these orders and restrictions . . . ." Id. at 21. Father maintains that the court further abused its discretion "when it 'calculated' the amount of time that [he] was 'a part of young [E.M.'s] life.'" Id. He further argues that "[i]t was only [Mother's] self-serving testimony that [he] was not a fit parent, never providing any evidence to the trial court when requested," that Mother admitted "hearsay statements" from Father's mother, and further that the court "asked several questions of both [grandparents] while they were in the courtroom gallery" in which "[t]hey were not sworn . . . ." Id. at 21-22.

As noted above, we do not have a transcript of the hearing because Father did not pay to have the hearing transcribed or otherwise provide a record of the proceedings below. Accordingly, we have no specific information regarding the evidence presented to support the court's findings in its Order. Father's failure to submit a transcript of the hearing is in contravention of Indiana Appellate Rule 9(F)(5), which provides that an appellant's Notice of Appeal shall designate "all portions of the Transcript necessary to present fairly and decide the issues on appeal." Appellate Rule 9(F)(5) further provides that, "[i]f the appellant intends to urge on appeal that a finding of fact or conclusion thereon is unsupported by the evidence or is contrary to the evidence, the Notice of Appeal shall request a Transcript of all

the evidence."

The Indiana Supreme Court has addressed an appellant's failure to include a transcript on appeal when factual issues are presented and held that, "[a]lthough not fatal to the appeal, failure to include a transcript works a waiver of any specifications of error which depend upon the evidence." In re Walker, 665 N.E.2d 586, 588 (Ind. 1996) (quoting Campbell v. Criterion Grp., 605 N.E.2d 150, 160 (Ind. 1992)).

We recognize that on March 5, 2014, in addition to his motion to proceed in *forma pauperis*, Father filed a Motion to Compel Trial Court Clerk to Provide Clerk's Record and Transcript to Appellant and Waiver of All Fees in this court. On April 2, 2014, this court granted his motion to proceed in *forma pauperis* and denied the motion to compel the production of the transcript and record. Further, on April 29, 2014, Father filed a Motion to Compel Trial Clerk to File Transcript Pursuant to App. R. 10(G) & App. R. 11(D), which this court denied on May 22, 2014.

The Indiana Supreme Court, in Campbell, discussed the entitlement of an indigent on appeal. In that case, a pauper civil appellant asked the Court to find, as a matter of law, that he was "entitled to have the record of proceedings, including a transcript of the evidence, prepared at public expense." 605 N.E.2d at 160. The Court recognized that preparing transcripts of proceedings below "often runs in the hundreds or thousands of dollars, thereby exceeding even the appellate filing fee," that "[c]learly, costs of this magnitude would be prohibitive to most indigent appellants," and it agreed "that the failure to accommodate paupers in this regard would be tantamount to denying them, by reason of their indigency,

8

access to process upon which they would otherwise have claim." Id. Nonetheless, the Court went on to find that such "does not dictate, however, the conclusion that indigent civil appellants are entitled to have a complete record of the proceedings, including a transcription, prepared for them at public expense." Id. Rather, the Court held that the Indiana Appellate Rules afford "a narrowly tailored solution," by way of a statement of the evidence, the current version of which is found at Ind. Appellate Rule 31,[5] which provides in part (A) as follows:

> If no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection. The party shall then file a motion to certify the statement of evidence with the trial court or Administrative Agency. The statement of evidence shall be attached to the motion.

> The Court further explained that, although the rule is typically relied upon "when a

---

[5] We note that the relevant rule at the time of Campbell was Ind. Appellate Rule 7.2(A)(3)(c), which is substantially similar to the current Ind. Appellate Rule 31(A) and provided as follows:

> If no report of all or part of the evidence or proceedings at the hearing or trial was or is being made, or if a transcript is unavailable, a party may prepare a statement of the evidence or proceedings from the best available means, including his recollection. If submitted contemporaneously with the matter complained of, the statement may be settled and approved by the trial court. If submitted thereafter, the statement shall be served on other parties who may serve objections or prepare amendments thereto within ten (10) days after service. The statement and any objections or prepared amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall become a part of the record and be included by the clerk of the trial court in the record.

> If statements or conduct of the trial judge are in controversy, the statement shall be supported by sworn affidavit which shall be submitted to the trial judge for his certification. If he refuses to certify the statement he shall file opposing affidavits. All such affidavits shall be included in the record by the clerk of the trial court.

In the year 2000, the appellate rule governing the creation of a statement of the evidence became Ind. Appellate Rule 31, which was identical to the current version of the rule.

transcription of the evidence is unavailable due to equipment failure or the destruction of records," physical unavailability was not the "sole fact which will trigger the rule," and it held "that a transcript is also unavailable for purposes of [the rule] when an indigent is unable to bear the costs of its preparation." Id. In so holding, the Court explained:

> Granting an application to proceed *in forma pauperis* does entitle the pauper to special accommodation with respect to creation of the record. As far as transcription of the evidence is concerned, that accommodation should center on the utilization of Appellate Rule [31(A)]. Agreed statements, as provided for in Appellate Rule 7.3,[6] may also be an acceptable alternative. We believe that resort to one of these two mechanisms will enable most appellants to perfect their appeals. Moreover, we believe these mechanisms strike the proper balance between our obligation to protect the procedural entitlements of indigent suitors and the legitimate fiscal needs of our counties. When one of these methods proves inadequate in a particular case, trial courts may authorize additional accommodations, including transcripts, to assure indigents the right of appeal.

Id. at 160-161.

Here, Father has not demonstrated that preparing a statement of the evidence pursuant to Ind. Appellate Rule 31 would be inadequate for our purposes to review the issues raised. To the extent that Father presents issues which require review of the evidence or testimony presented at the December 10, 2013 hearing, because he did not provide a transcript of the hearing nor a statement of the evidence, such issues are waived. See, e.g., Lifeline Youth & Family Servs., Inc. v. Installed Bldg. Prods., Inc., 996 N.E.2d 808, 814-815 (Ind. Ct. App. 2013) (affirming the trial court and holding that because the appellant "relies on the evidence presented during the jury trial in support of its argument challenging the amount of the jury's damages verdict, we must conclude that Lifeline has waived any such damages argument and

has failed to prove that the trial court abused its discretion by denying its motion to correct error"); Ostrowski v. Everest Healthcare Ind., Inc., 956 N.E.2d 1144, 1147-1148 (Ind. Ct. App. 2011) (holding that appellant waived argument by failing to comply with the appellate rule requiring him to designate relevant portions of the transcript necessary to decide issue on appeal); Fields v. Conforti, 868 N.E.2d 507, 511 (Ind. Ct. App. 2007) (explaining that appellant's arguments that depended upon the evidence at trial were waived by appellant's failure to request a transcript of the bench trial); see also Kocher v. Getz, 824 N.E.2d 671, 675 (Ind. 2005) (holding that, where appellant challenged the amount of appeal bond but failed to provide a transcript of the relevant hearing, appellant failed to demonstrate that the trial court abused its discretion in the amount ordered).

Thus, although some of Father's arguments are waived, his challenge as to whether the court made the requisite findings pursuant to Ind. Code § 31-17-4-2 presents us with a question of law. We observe that Ind. Code § 31-17-4-2 governs the modification, denial, and restriction of parenting time rights and provides:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

The court did not make a finding that providing Father with parenting time might endanger E.M.'s physical health or significantly impair E.M.'s emotional development, instead finding only that Father had been a part of E.M.'s life for one year and that it is not in E.M.'s best

---

[6] The current Appellate Rule governing agreed statements is Ind. Appellate Rule 33.

11

interest to have in-person parenting time at a DOC facility.  Also, the court at least implied that its decision was based in part on the reluctance of Mother and grandparents to transport E.M. to Father, as noted in Paragraph 7 of the Order.

We previously addressed a similar issue in Rickman v. Rickman, 993 N.E.2d 1166 (Ind. Ct. App. 2013).  In that case, appellant Rickman had been sentenced to an aggregate term of fifty years for eight counts of child molesting as class A felonies, child molesting as a class C felony, and criminal confinement as a class C felony, and twelve years subsequent to his sentencing he filed a verified petition for modification of visitation order requesting "that the court grant him telephone access with [his child] and communication via mail."  993 N.E.2d at 1167.  Rickman's motion was denied without a hearing in which the court noted that he was incarcerated on child molesting charges. Id. We began our analysis by observing that the court did not make a finding regarding the endangerment of the child's physical health or significant impairment of the child's emotional development as required by Ind. Code § 31-17-4-2  Id. at 1168.  We also noted that "absent potential endangerment or significant impairment of the child's health, safety, or emotional development, the plain language of the Parenting Time Guidelines presumes that the Guidelines would apply in this case," observing specifically that "the Indiana Supreme Court has implied that the Parenting Time Guidelines apply when one parent is incarcerated." Id. at 1169 (citing Clark v. Clark, 902 N.E.2d 813, 814 (Ind. 2009)).  We observed that it was "necessary" that the court discuss its factual basis and make findings regarding potential endangerment of the child's physical health or safety or significant impairment of the child's emotional development in order to

12

deny parenting time, and we remanded "for the trial court to provide a written explanation for its reasons for denying the petition or to conduct other proceedings consistent with this opinion." Id. at 1169-1170.

Similarly here, as noted by Father, the court did not make the necessary finding in order to restrict Father's parenting time that such parenting time might endanger E.M.'s physical health or significantly impair his emotional development. Under these circumstances and recognizing that Mother did not file an appellee's brief, we remand for the trial court to determine and make one or more findings as to whether the child's physical health or safety would be endangered or whether there would be significant impairment of the child's emotional development by allowing Father parenting time, or, in its discretion, to conduct other proceedings consistent with this opinion. See also Hatmaker v. Hatmaker, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013) (noting that "[e]ven though the statute uses the word 'might,' this Court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time 'would' endanger the child's physical health or emotional development").

CONCLUSION

For the foregoing reasons, we remand to the trial court to make the necessary determinations set forth herein.

Remanded.

BARNES, J., and BRADFORD, J., concur.

13