## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 14 2016, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

M.V.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

V.K. (Minor Child), Child in Need of Services,

and

M.V. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

October 14, 2016

Court of Appeals Case No.
03A04-1604-JC-736

Appeal from the Bartholomew Circuit Court

The Honorable Stephen R. Heimann, Judge
The Honorable Heather M. Mollo, Magistrate

Trial Court Cause Nos.
03C01-1505-JC-2515
03D01-1401-DR-31

M.V. (Mother),

*Appellant-Respondent,*

v.

J.K. (Father),

*Appellee-Petitioner*

**Baker, Judge.**

[1] M.V. (Mother) appeals the trial court's decision to combine the permanency and custody hearings for her daughter, V.K., following the dissolution of Mother's marriage to J.K. (Father) and the adjudication of V.K. as a Child in Need of Services (CHINS). Mother argues that the process of holding a combined hearing deprived her of her due process rights, that the trial court erred when it restricted her parenting time, and that the Department of Child Services (DCS) prematurely closed the CHINS case. Finding no due process violations and no other error, we affirm.

## Facts

[2] V.K. was born on November 12, 2012. Mother and Father married on December 12, 2012. They later separated, and on January 3, 2014, Father filed a petition to dissolve the marriage. He requested that the court conduct a provisional hearing to determine custody issues. On February 21, 2014, a provisional hearing took place, and the court awarded Father "temporary care,

custody, and control" of V.K. App. p. 41. Mother had visits every other weekend.

[3] On May 17, 2015, Father asked a neighbor for a diaper and queried whether he could leave V.K. there while he attended a job interview. The neighbor noticed that the child's clothes were soaked in urine and that she appeared to have a bad diaper rash. On May 18, 2015, Father approached the same neighbor and again left V.K. with the neighbor, even though the neighbor was unwilling to care for her while Father was at work. The neighbor observed that Father appeared to be under the influence when he brought the child over. The neighbor also noticed that V.K.'s diaper rash had worsened and that she was still in the same diaper from the previous day, and the neighbor took her to the emergency room. The hospital staff noted that the child had severe diaper rash that was likely the result of neglect.

[4] V.K. was removed from Father's home by DCS, and Father was arrested for neglect of a dependent. On May 20, 2015, DCS filed a petition alleging that V.K. was a CHINS due to the severity of the diaper rash, concerns for neglect, and concerns for substance use such that the child's safety could not be ensured. On July 10, 2015, the trial court found that V.K. was a CHINS.

[5] On September 22, 2015, the court issued a dispositional decree. It ordered Father to complete a substance use assessment and comply with any recommended treatment; it also ordered Father to participate in Fatherhood Engagement to address co-parenting, budgeting, transportation, and childcare,

and to follow all recommendations. The court ordered Mother to participate in home based case management to address parenting, co-parenting, discipline, employment, and childcare, and to follow all recommendations; Mother was also ordered to complete a comprehensive evaluation to determine her need for substance use treatment and mental health treatment, and to complete any recommended treatment. The court also ordered both parents to, among other things, attend all scheduled visitations with V.K. and comply with all visitation rules and procedures, to submit to random drug screens within twenty-four hours of request or on demand, and to contact the family case manager every week to allow the manager to monitor compliance with the CHINS matter.

[6] Following this order, DCS requested authorization for a trial home visit with Father, stating that Father had been participating in Fatherhood Engagement and completing treatment goals, that Father had completed a substance abuse assessment and no recommendations were noted for him, that Father had been participating in overnight visits with V.K. and those visits were progressing well, and that it would be in the best interests of the child for a trial home visit to begin with Father. On September 28, 2015, the trial court granted the request, and V.K. returned to Father's home.

[7] Meanwhile, on September 7, 2015, Mother and Father's marriage was dissolved. The trial court did not determine custody at that time because of the ongoing CHINS case. On October 29, 2015, a periodic case review hearing took place in the CHINS case. The trial court noted that Father had complied with the child's case plan but Mother had not. The trial court further noted that

DCS and Father had concerns with Mother having unsupervised parenting time because of ongoing concerns for violence and Mother's mental health. The trial court stated that it was appropriate to consider permanent placement of V.K. with Father; that Father had enhanced his ability to fulfill his parental obligations but that Mother had not; that Father had cooperated with DCS but that Mother could improve in her level of cooperation; and that Mother's visitation with the child shall remain supervised.

[8] On January 14 and February 19, 2016, pursuant to the agreement of the parties, a combined permanency hearing in the CHINS case and custody modification hearing in the dissolution case took place. On March 7, 2016, the trial court awarded sole legal and primary physical custody of V.K. to Father, and it awarded Mother four hours of supervised parenting time every other week. It entered the order in both the CHINS case and in the dissolution case. On March 16, 2016, the trial court granted DCS' motion to close the CHINS proceeding. Mother now appeals.[1]

---

[1] Mother is appealing the orders in the dissolution case and in the CHINS case. She served notice of appeal to Father, but her caption on her appellate brief reflected only an appeal of the CHINS case and omitted the dissolution case. Thus, although Father had a right to file a brief in this appeal to contest Mother's arguments regarding custody in the dissolution case, we understand why he did not do so. Because we try to resolve CHINS and child custody cases as expeditiously as possible and because we are ruling in his favor, we have not stayed the appellate proceeding to afford Father the chance to file a brief.

# Discussion and Decision

[9] Mother argues that the process of holding a combined hearing deprived her of her due process rights, that the trial court erred when it restricted her parenting time, and that DCS prematurely closed the CHINS case.

# I. Combined Hearing

[10] Mother first argues that she was deprived of her due process rights when the trial court combined the permanency and custody hearings and that the combined hearing created a high risk of error because it allowed DCS, rather than Father, to prove Father's custody case.

[11] Due process protections bar "state action that deprives a person of life, liberty, or property without a fair proceeding." *In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014) (citation omitted). Due process protections are vital during all stages of CHINS proceedings "because every CHINS proceeding has potential to interfere with the rights of parents in the upbringing of their children." *Id.* (internal quotation marks and citation omitted). Due process requires "'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *In re K.D.*, 962 N.E.2d 1249, 1257 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[12] A party's constitutional claim is considered waived when it is raised for the first time on appeal. *Hite v. Vanderburgh Cnty. Office of Family and Children*, 845 N.E.2d 175, 180 (Ind. Ct. App. 2006). Our review of the record reveals that Mother never objected to the combined hearings based on a due process

argument; instead, she explicitly consented to it. When the trial court suggested a combined permanency and custody hearing, Mother's counsel responded: "And I guess it seems to me that all of the evidence we have to present towards whether that permanency plan should be entered or not, would also be the evidence as far as a custody determination." Tr. p. 39. When the trial court again asked, "So keep it all together?", Mother's counsel did not object. *Id.* at 39-40. Thus, Mother's argument regarding the effect of the combined hearing on her due process rights is waived on appeal.

[13] Waiver notwithstanding, Mother's assertion that the combined hearing deprived her of due process lacks merit. She provides no authority to support her contention that the court's decision to combine the permanency and custody hearings was an error or that it created a high risk of error. *See McBride v. Monroe Cnty. Office of Family and Children*, 798 N.E.2d 185, 197 (Ind. Ct. App. 2003) (finding no error when the court conducted a review hearing and a permanency hearing at the same time when the appellant provided no authority to support her contention that the simultaneous hearings denied her due process). Mother concedes "that the trial court had the authority to simultaneously exercise jurisdiction over both matters." Appellant's Br. p. 8. *See also* Ind. Code § 31-30-1-12(a) (a court with jurisdiction over a child custody or parenting time proceeding in a marriage dissolution "has concurrent original jurisdiction with the juvenile court for the purpose of modifying custody of a child who is under the jurisdiction of the juvenile court because the child is the subject of a child in need of services proceeding"). Moreover, Mother was

present and had counsel who represented her during the proceeding. Mother testified and, through counsel, cross-examined DCS's and Father's witnesses. We find, therefore, that Mother had the opportunity to be heard at a meaningful time and in a meaningful manner. We decline to reverse based on the trial court's decision to hold the combined hearing.

## II. Parenting Time[2]

[14] Mother also argues that the trial court erred when it restricted her parenting time and that it failed to make specific findings to support the restrictions.

[15] A decision about parenting time requires us to give foremost consideration to the best interests of the child. *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013). We will uphold a parenting time decision if the record reveals a rational basis for the trial court's determination. *Meisberger v. Bishop*, 15 N.E.3d 653, 656 (Ind. Ct. App. 2014). Indiana recognizes that a noncustodial parent's right of visitation with his or her own children is a "'precious privilege'" and that the "noncustodial parent is 'generally entitled to reasonable visitation rights.'" *Perkinson*, 989 N.E.2d at 762 (quoting *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006)). Indiana Code section 31-17-4-1 provides that "[a] parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial

---

[2] We infer that Mother is appealing this order under the dissolution of marriage proceeding, not under the CHINS proceeding, which has been closed.

parent might endanger the child's physical health or significantly impair the child's emotional development." The trial court must make specific findings to support its parenting time order. *Perkinson*, 989 N.E.2d at 765. The party seeking "to restrict parenting time rights bears the burden of presenting evidence justifying such a restriction by the preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

[16] In the custody order, the trial court found that:

- Father successfully completed services with the Fatherhood Engagement program and a substance use assessment with no needs identified;
- Father demonstrated stability in his housing and employment and created a childcare plan for V.K. while he is working;
- Father demonstrated a child-focused lifestyle and a commitment to co-parenting;
- Father demonstrated that he can provide a safe, stable, and loving home to V.K.;
- Mother failed to complete a mental health assessment;
- Service providers observed that Mother has unrealistic views about V.K.'s development; difficulty regulating her emotions such that she can become so emotionally upset that she is distracted from parenting her child; and difficulty in understanding and processing information as evidenced by excessive voicemails left by Mother in which she continues to ask questions to previously answered questions; and
- Father has concerns about Mother's judgment as it relates to V.K.'s well-being because prior to DCS involvement, during parenting time granted by a provisional order in the dissolution of marriage action, Mother stopped giving V.K. medication for MRSA and tried to physically squeeze the MRSA out, resulting in V.K. being hospitalized.

App. p. 7-9.

[17]   Mother contends that "it is not clear what standard the trial court applied in restricting Mother's parenting time." Appellant's Br. p. 8. She also contends that the trial court failed to make specific findings to support the restriction, and that it erred when it did not specifically identify the standard set forth in Indiana Code section 31-17-4-1 and when it did not make specific findings that parenting time would endanger V.K.'s physical or mental health. The standard for denying or restricting parenting time "'requires evidence establishing that visitation 'would' (not 'might') endanger or impair the physical or mental health of the child.'" *Perkinson*, 989 N.E.2d at 763 (quoting *Stewart v. Stewart*, 521 N.E.2d 956, 960 n.3 (Ind. Ct. App. 1988)).

[18]   We find that the trial court did identify the appropriate standard when it stated the following in the permanency order:

> 20. The court finds that is [sic] shall be in the child's best interest that custody be awarded to [Father].
>
> 21. The Court finds by clear and convincing evidence that the best interests of the child, [V.K.], is substantially served by granting [Father] sole legal custody and primary physical custody of [V.K.]

[19]   App. p. 8-9. Further, it is apparent to us that the trial court applied the appropriate standard when restricting Mother's parenting time, as evidenced by its stated concerns about Mother's mental health, unwillingness to complete a mental health evaluation, inability to regulate her emotions, and decision to quit giving V.K. necessary medication, which resulted in V.K.'s hospitalization.

These findings indicate that the trial court was concerned that time spent with Mother would endanger or impair V.K.'s physical or mental health.

[20] Mother further contends that the combined hearing resulted in DCS, rather than Father, proving that Mother's parenting time should be restricted. We disagree. Father testified, was cross-examined, and served as a rebuttal witness during the hearing, providing his own evidence that, in addition to the evidence presented by DCS, allowed the trial court to come to its determination. Specifically, he testified about his concerns about Mother's treatment of V.K. when V.K. had MRSA, Mother's unrealistic views of what is age appropriate for a child, an occurrence of alleged domestic violence that took place while V.K. was visiting Mother, and Mother's inappropriate behavior that resulted in a few visits being cut short, including one that involved the police. Further, we note that Father presented two voicemails left by Mother to Father as examples of Mother's inability to conduct herself civilly and apparent unwillingness to co-parent:

> "Your [sic] not letting me talk to my daughter, to my daughter [sic]. I don't have to go through [Family Case Manager] to do it. Okay. I don't make a kid with [Family Case Manager], I made a kid with you unfortunately. It's not on paper, you don't have anything on paper. Okay, and whatever you have that's hearsay, because that's hearsay. You don't have anything up to par, okay, and I'm also stated that in Indiana, in the State of Indiana, under the Indiana guidelines, I have different rights to talk to my child. I looked it up online, so I know what I'm talking about, and since you're not letting me talk to my daughter, I don't have to go through [Family Case Manager]. Okay, I didn't make a kid with [Family Case Manager], I made a kid with you unfortunately,

and you wanna act like a f**kin' d**k-wad? And I can be the biggest f**kin b***h you've ever met and I'm not joking, You don't wanna let me be around my child? Well (inaudible), but you have? That's fine, but you know what? I'm stronger now, and I'm a lot better now than I ever was before and you are not going to break me, [Father]."

"I really don't have anything to say to you, I just wanted to talk to my daughter, okay. And since you wanna be so f**kin' selfish and keep her all to yourself, on Thursday, I have every bit of right to her, just as much as you do, and I'm not talking to you, because all [I] have is lies, and I'm tired of it. I have (inaudible) to you, and I have nothing more to say to you. Go be happy with your f**king n*****, I really don't give a f**k. But she's not gonna be around my child. . . ."

Tr. p. 150-52. We find that Father's evidence alone would have been sufficient to show by a preponderance of the evidence that Mother's parenting time restriction is warranted. The evidence presented by DCS merely corroborated Father's evidence. In sum, we find the evidence sufficient to support the trial court's restriction of Mother's parenting time.

## IV. Closure of CHINS Case

[21] Finally, Mother argues that DCS prematurely terminated services when it closed the CHINS case on February 19, 2016, and that the termination "resulted in the denial of due process." Appellant's Br. at 11. She argues that no impending deadlines or ongoing permanency concerns necessitated the termination of services to Mother at that time because the trial court recognized that a permanency hearing was not required until May 2016.

[22] The purpose of a CHINS adjudication is to protect children, not punish parents. *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). The "policy and purpose of the CHINS statutory scheme is not to remove children from their parents without giving the parents a reasonable opportunity to participate." *In re J.B.*, --- N.E.3d ---, No. 20A05—1510—JC—1612, 2016 WL 4728565, at *4 (Ind. Ct. App. 2016). The CHINS adjudication does not establish culpability on the part of a particular parent. *In re N.E.*, 919 N.E.2d at 105. Because a CHINS determination establishes the status of a child alone, a separate analysis as to each parent is not required in the CHINS determination stage. *Id.* at 106. The resolution of a juvenile proceeding focuses on the best interests of the child. *Id.* "When the juvenile court finds that the objectives of the dispositional decree have been met, the court shall discharge the child and the child's parent, guardian, or custodian." Ind. Code § 31-34-21-11.

[23] On May 28, 2015, Mother was referred for home based case management to address any necessary parenting education that may have needed to be completed; Mother did not commit to participating in the program. On November 2, 2015, Mother was referred for home based therapy and at the time of the January 14, 2016, hearing, she had only participated in two therapy sessions. On September 14, 2015, she completed a substance abuse assessment and was not recommended for any additional services; however, the provider indicated that Mother could benefit from mental health services in order to help develop positive coping skills. On October 2, 2015, Mother's family case manager referred Mother for psychological services. Mother was scheduled for

an evaluation on November 6, 2015, but she cancelled that appointment and refused to reschedule due to the provider's distance from her. Mother's family case manager then referred Mother to a provider closer to Mother, and an evaluation was scheduled for December 22, 2015. Mother declined to attend, saying that she did not have transportation. Mother's family case manager advised Mother that Mother's therapist could transport her to her appointment if transportation was a barrier. Mother also reported to her family case manager that she was not willing to do that evaluation at times.

[24] Given these facts, we strongly disagree with Mother's assertion that "[t]his was not a circumstance in which Mother blatantly and repeatedly refused to participate in services" but instead was "a situation where DCS required the service, did not offer it, and then cited Mother's failure to undergo the evaluation as a reason why Father should be awarded custody and Mother's parenting time should be restricted." Appellant's Br. p. 11. At the October 29, 2015, review hearing, the trial court noted that Mother "has fluctuated as to her willingness to participate" in a mental health evaluation and that Mother "has questioned the need despite the treatment team seeing significant mental health needs." App. p. 31. Mother received numerous opportunities long before the February 19, 2016, hearing, to participate in the services, and the record is clear that Mother's family case manager was responsive to her concerns about the location of the services and transportation and made appropriate referrals and suggestions to overcome those obstacles.

[25] Thus, over the course of nine months, Mother had a reasonable opportunity to participate in all court-ordered services. She failed to do so. She cannot now credibly complain that she did not have a chance. *Compare with In re J.B.* (reversing the part of the CHINS court's order that discharged the parties and terminated the CHINS case because the parents did not have a reasonable opportunity to participate in the CHINS adjudication when the trial court granted DCS's request to close the CHINS case, with the CHINS finding intact, before a dispositional decree was entered and before Mother could participate in services). We find no error on the part of DCS, nor do we find that the termination of services resulted in any deprivation of due process rights because, as discussed above, Mother had the opportunity to be heard at a meaningful time and in a meaningful manner.

[26] Moreover, Father complied with the trial court's orders. The trial court found that Father demonstrated stability in his housing and employment, that Father created a strong plan of care of his daughter while he is working, and that Father showed a child-focused lifestyle and a commitment to co-parenting. In short, the trial court found that Father demonstrated that he can provide a safe, stable, and loving home to V.K. Under these circumstances, the trial court is *required* to close the CHINS case. *See* Ind. Code § 31-34-21-11. Therefore, regardless of Mother's shortcomings, the trial court did not err in finding that

the objectives of the dispositional decree were met and in discharging the CHINS case.[3]

[27] The judgment of the trial court is affirmed.

Vaidik, C.J., and Najam, J., concur.

---

[3] In Mother's final argument, she complains that the trial court's order severely limited the amount of time she and V.K. could spend together and prevents them from spending any holidays together. We note that, pursuant to the child custody modification statutes, Mother is free to petition the court to modify the custody order in the dissolution case.