# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 22 2019, 8:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
Julie Dixon
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S.M., <br> *Appellant-Defendant,* <br><br> v. <br><br> A.A., <br> *Appellee-Plaintiff* | October 22, 2019 <br><br> Court of Appeals Case No. 19A-DR-959 <br><br> Appeal from the Carroll Circuit Court <br><br> The Honorable Benjamin A. Diener, Judge <br><br> Trial Court Cause No. 08C01-1201-DR-14 |

**Bailey, Judge.**

# Case Summary

[1] S.M. ("Mother") appeals an order, entered upon the request of A.A. ("Father"), terminating Mother's parenting time with O.A. ("Child") on grounds that Mother is a flight risk.[1] Mother presents the issue of whether the evidence fails to establish the statutory requisites for terminating or restricting parenting time.[2] We reverse.

# Facts and Procedural History

[2] Child was born in 2011. When Mother and Father divorced in 2012, Child resided primarily with Mother. In 2017, Mother and Father agreed to their joint physical custody of Child. In April of 2018, Mother was awarded primary physical custody of Child. Thereafter, Child was frequently absent from his kindergarten classes and Father sought custody modification. On August 6, 2018, Father was awarded primary physical custody and sole legal custody of Child. Mother was awarded parenting time pursuant to the Indiana Parenting Time Guidelines ("Guidelines"), at a minimum, or as agreed by the parties.

---

[1] The trial court determined that Mother was no longer entitled to parenting time under the Indiana Parenting Time Guidelines ("Guidelines") but issued an order contemplating some supervised parenting time. However, the order lacked specificity with regard to time, place, or appointment or qualification of a supervisor. The order effectively left any parenting time contingent upon cooperation from the custodial parent, who was historically uncooperative. Thus, as a practical matter, Mother's parenting time was completely eliminated.

[2] Although she does not articulate a separate issue in this regard, Mother also observes that the reversal of the trial court order would affect the calculation of child support she owes, because Mother was given no parenting time credit in the existing order.

[3] Father denied Mother mid-week parenting time under the Guidelines, purportedly after consultation with his attorney. Father also cut off Child's telephonic communication with Mother, based upon his expressed belief that Mother had interrogated Child. However, Mother was permitted four weekend visits from July to September of 2018.

[4] When Mother appeared at Child's school on September 28, 2018 to pick up Child, Father was already there. A verbal altercation ensued, with Father cursing Mother and demanding that she leave. Police officers arrived and advised Mother to leave and pick up Child from Father later, in accordance with Father's wishes.[3] Mother complied. Her parenting time began at 6:00 p.m. on September 28th and she was scheduled to return Child to Father on Sunday, September 30, 2018 at 6:00 p.m.

[5] After she picked up Child, Mother went to the home of her parents ("Maternal Grandparents.") Mother advised Maternal Grandparents that Father had threatened her life and that she was taking Child to a women's shelter. Maternal Grandparents helped Mother pack and load her vehicle.[4] Mother left

---

[3] One of these officers would later testify that, notwithstanding Father's concerns, Mother did not appear to be under the influence of any substance.

[4] Maternal Grandparents formed the opinion that Father had, in the past, committed domestic violence upon Mother. Specifically, Maternal Grandmother testified that she had seen bruising on Mother and Mother had reported that Father twisted her ankle. Maternal Grandfather also testified that Father had victimized Mother, and he had no reason to believe that anyone else had done so following Child's birth.

with Child but did not go to a women's shelter, purportedly because there was no such shelter in Carroll County.

[6] On Monday, October 1, 2018, Child was not at school. The trial court issued an ex parte order authorizing law enforcement officers to locate Child and return him to Father. Carroll County Sheriff's Deputies located Mother and Child in a motel in Lafayette, Indiana. Mother was charged with Interference with Custody.[5] After Child was returned to Father, he sought to modify or terminate Mother's parenting time and Mother sought enforcement of parenting time and make-up time according to the Guidelines.

[7] The parties appeared for hearings on December 28, 2018, January 25, 2019, and March 28, 2019. At the first hearing, Father testified and admitted that he had denied Mother parenting time and had blocked her telephone number. Father opined that Mother posed a risk to Child, and that she was "mentally ill" as evidenced by fabricated threats. (Tr. Vol. I, pg. 54.) Mother testified that she feared Father and she posed no threat to Child. At the conclusion of the hearing, the trial court found "there is risk of flight and that mother is in situations involving family violence of unknown perpetrators" and orally modified Mother's parenting time to parenting time "as parties may agree, period, until further hearing." *Id.* at 121. When Mother's attorney requested clarification, the trial court responded:

---

[5] The record does not contain documentation as to whether Mother was convicted of this offense.

I'm not here to explain, justify, or do anything. The Parties['] parenting time is as the parties may agree. If they don't reach agreements between not [sic] and January 21st then we don't have parenting.

*Id.* at 122.

[8] On January 25, 2019, the parties again appeared. Father testified that his attempts to reach an agreement with Mother on parenting time were "none," her text messages to which he responded were "none," and he had returned no telephone calls from Mother's attorney. *Id.* at 175. Mother's therapist testified that Father had declined to participate in family therapy. She opined that Mother was not a threat to Child nor was Mother a flight risk. Mother testified that she had no contact from Child at all after the prior hearing. The hearing was continued with no parenting time afforded to Mother.

[9] On March 28, 2019, the parties again appeared, and Father again admitted that he had completely denied Mother parenting time. He testified that Mother's last visit with Child had taken place six months earlier. He stated that no agreement had been made on a visitation supervisor. On March 29, 2019, the trial court entered a written order granting Father's motion to modify parenting time. The trial court found the Guidelines to be "no longer applicable" as Mother "exhibited that she is a risk of flight with a child." Appealed Order at 2. In pertinent part, the order provided:

Mother shall only be entitled [to] therapeutic, supervised parenting time until it is demonstrated to the Court that Mother is not a flight risk and that she is able to exercise parenting time

without endangering the child's physical health or safety, or significantly impairing the child's emotional development.

Mother shall bear the costs associated with therapeutic, supervised parenting time.

Father shall make Parties' child available for therapeutic, supervised parenting time provided that it does not occur during the hours of the day the child would otherwise be at school.

*Id.* The trial court found Father to be in contempt of court and admonished him for his failure to comply with court orders on parenting time. On April 1, 2019, the trial court ordered Mother to pay $49.00 weekly in child support, not reduced by any parenting time credit. Mother now appeals.

# Discussion and Decision

[10] Father did not file an appellee's brief. When an appellee fails to submit a brief, we do not assume the burden of developing an argument for that party, and we apply a less stringent standard of review. *Meisberger v. Bishop*, 15 N.E.3d 653, 656 (Ind. Ct. App. 2014). That is, we may reverse if the appellant establishes prima facie error. *Id.* However, questions of law are reviewed de novo. *Id.*

[11] A child has a right both to support and parenting time; Indiana has a legislatively-expressed presumption in favor of parenting time with the noncustodial parent. *Perkinson v. Perkinson*, 989 N.E.2d 758, 765 (Ind. 2013) (citing Ind. Code § 31-17-4-2). A party who seeks to restrict parenting time rights bears the burden of presenting evidence justifying the restriction by a

preponderance of the evidence. *Id.* at 764. The restriction or denial of parenting time is governed by Indiana Code Section 31-17-4-2, which provides as follows:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Although the statute uses the word "might," this Court has previously interpreted the language to mean that a court may not restrict parenting time unless that parenting time "would" endanger the child's physical health or emotional development. *See Stewart v. Stewart*, 521 N.E.2d 956, 960 n.3 (Ind. Ct. App. 1988), *trans. denied*. The court's written explanation must include both "a factual basis and a finding as to potential endangerment." *Rickman v. Rickman*, 993 N.E.2d 1166, 1169 (Ind. Ct. App. 2013).

[12]  Mother concedes that the trial court made a requisite statutory finding of endangerment. However, she contends that the finding of endangerment is not supported by the evidence. She argues that the evidence shows an isolated violation on her part and that she is neither a flight risk nor a threat to Child.

[13]  Indiana recognizes that the right of a non-custodial parent to visit his or her children is a "precious privilege." *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), *trans. denied*. Also, a child has the correlative right to receive parenting time from the noncustodial parent because it is presumed to be in the

child's best interest. *Perkinson*, 989 N.E.2d at 764. Thus, "[e]xtraordinary circumstances must exist to deny parenting time to a parent, which necessarily denies the same to the child." *Id.* at 765. The reviewing court looks "to whether there were specific findings of egregious or extraordinary circumstances that support the court's denial of parenting time." *Id.*

[14] Mother admitted that she took Child to a hotel room in a neighboring county and kept Child beyond her authorized parenting time. But Mother insists she is not a flight risk; she asserts that she is physically and financially in no position to abscond with Child. Mother testified that she is unemployed and has applied for disability benefits. She has been diagnosed with degenerative disc disease, rheumatoid arthritis, and a form of spondylitis; she is a partial amputee. For the past fifteen years, Mother had lived less than one mile from Maternal Grandparents. That residence had been purchased in 1992, and Maternal Grandfather testified that Mother could not afford to "leave a paid-for home." (Tr. Vol. I, pg. 171.) According to Maternal Grandfather, he and his wife financially support Mother. Father did not contradict any of these assertions. The evidence of record is that Mother violated the parenting time order on one occasion but lacks resources necessary for sustained flight. Also, the sole expert testimony offered was that of Dr. Deep K. Battu, a psychologist who opined that she had "no concerns about Mother caring for Child." *Id.* at 192.

[15] We do not condone Mother's action but must evaluate her misconduct in light of the presumption in favor of parenting time. The instant circumstances simply do not approach the egregious or extraordinary circumstances that have

supported the suspension of parenting time in other cases. *See e.g., Duncan*, 843 N.E.2d at 972 (suspension of visitation "at this time" affirmed where the father requesting visits had sexually molested another of his children, the abuse had been substantiated, the father had threatened the oldest child with a loaded gun, and he showed no remorse and refused counseling sessions), *trans. denied*.

[16] Mother has established, prima facie, that the decision to restrict her parenting time to unspecified, supervised parenting time is contrary to law because it lacks a sufficient factual basis.

# Conclusion

[17] We reverse the order terminating Mother's Guideline-based parenting time. Accordingly, she is entitled to makeup time and modification of the child support order to reflect an appropriate parenting time credit. We remand for further proceedings consistent with this opinion.

[18] Reversed and remanded.

Najam, J., and May, J., concur.