## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2020, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Eric D. Smith
Greenwood, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric Smith,<br>*Appellant*, | December 21, 2020 |
| | Court of Appeals Case No.<br>20A-JP-657 |
| v. | Appeal from the Shelby Superior Court |
| Shanna M. LaMar,<br>*Appellee*. | The Honorable Andrew S. Roesener, Special Judge |
| | Trial Court Cause No.<br>73D01-1606-JP-43 |

**Brown, Judge.**

[1]     Eric Smith, *pro se*, appeals and claims the trial court erred in modifying his child support obligation. We reverse and remand.

## Facts and Procedural History

[2]     Smith and Shanna LaMar have a child together. On November 28, 2017, the trial court entered an order that Smith pay child support of $129.15 weekly, his arrearage was $9,557.10 as of November 24, 2017, and he pay an additional $20.85 per week toward the arrearage for a total weekly payment of $150.

[3]     On December 30, 2019, Smith, *pro se*, filed a petition for modification of child support stating his income had been reduced since the prior support order. He attached payroll statements to his petition for the pay periods ending November 16 and November 30, 2019, which show that he had a regular hourly rate of $11, an overtime hourly rate of $16.50, and year-to-date earnings of $32,651.29 as of November 30, 2019.[1]

[4]     On February 24, 2020, the court held an evidentiary hearing at which Smith appeared *pro se* and LaMar appeared by counsel. The court admitted: Smith's W-2 for 2019, indicating taxable wages that year of $30,005.38; a payroll statement for LaMar indicating she earned $18.27 per hour; and Smith's proposed child support worksheet.

---

[1] The November 30, 2019 payroll statement also indicates there had been year-to-date deductions for health and life insurance totaling $3,310.25.

[5]     Smith testified that he earned $11 per hour, that in issuing its original support order the court had used a tax return showing he made over $36,000 or $38,000 per year, that since then his hours and pay had been reduced, and that his overtime pay is irregular and not guaranteed. He testified he worked in the home health care field and was also a full-time student. He indicated he paid $1,000 in support on December 7th, $150 on December 20th and January 4th, $250 on January 8th, $200 on January 18th, and $150 on February 1st and February 22nd. Transcript Volume II at 11. He testified that one of the reasons he has "been able to pay a little better" is because he "no longer ha[s] a home mortgage" and had been able to eliminate some debt. *Id*. He stated "I'm not tryin' to get away from paying $150.00. It's just I can't. . . . I'm only making $11.00 an hour." *Id*. He testified the wages shown on his 2019 W-2 included some overtime, "so that may not necessarily be my total for this year," and "[i]f I do not get that overtime, it could be less." *Id*. at 13.

[6]     When questioned by LaMar's counsel, Smith indicated that his payroll statement for the pay period ending November 30, 2019, showed that he had year-to-date earnings of $32,651.29, that he worked and was paid during December 2019, and that he used the wages on his W-2 to prepare his tax return. When asked "[h]ow much of a profit did you receive from the sale of your house," Smith answered "it was a lot and I was able to pay off my debt and pay more child support with it." *Id*. at 23. When asked "how much is a lot . . . [o]ver $20,000," he replied "[y]eah," when asked "[o]ver $30,000," he said "[p]robably, yeah," and when asked "[o]ver $40,000," he answered "[n]o . . . it

wasn't that much." *Id.* When asked "[y]ou realize that you were 11 thousand to 12 thousand behind in child support and you used only a thousand dollars out of that 30 to 40 thousand dollars you received toward back support," Smith replied "I paid more in child support on that with that money." *Id.* Smith testified he closed on the sale of his house on November 26th.

[7]     When asked "your arrearage as of April, 2018 . . . was over $11,700.00? And you . . . have not made all your child support payments on time since that order of May 17, 2018, have you,"[2] he testified "[n]o I haven't been able to. I can only pay what I can pay." *Id.* at 24. He testified "I've had other legal obligations. I had debts to clear away, medical bills" and "my interpretation of it is - pay off everything where I don't get in other legal issues - or other legal problems like gettin' sued." *Id.* at 25. He testified: "I was able to eliminate my car payment, which now I'm going to be able to pay more child support per week because that – because that debt is gone. Now I can use that money for child support. That's why I paid that debt off with the money from the house." *Id.* at 25-26. He also stated "I paid off medical bills with that," "[n]ow I don't have to worry about gettin' sued and having to pay maybe other court fees and fines and gettin' garnished," "I paid off credit cards too," and "[s]o now that that money's gone from the credit card payments, now I'm able to pay the child support." *Id.* at 26.

---

[2] The trial court entered an order on May 17, 2018, stating that Smith's arrearage as of April 13, 2018, was $11,707.10.

[8] LaMar testified that she earned $18.27 per hour, she maintained medical, dental, and vision insurance, and the insurance premiums were reflected on her payroll statement. She testified that Smith's arrearage had increased since April 2018. When asked "[b]ecause your independent indication (sic) indicates that [the] arrearage may have grown to more than $20,000.00, is that correct," she stated "[t]hat's correct." *Id*. at 36-37.

[9] On March 5, 2020, Smith filed a Motion to Re-Open Evidence arguing LaMar provided no documentation of his actual arrearage and that he cannot afford to pay $150 a week while making $11 an hour.

[10] On March 6, 2020, the trial court issued an order which provided:

> 1. [Smith's] "Verified Petition for Modification of Child Support" is GRANTED.
>
> 2. [Smith's] current weekly child support obligation is one hundred twenty-nine dollars and fifteen cents ($129.15).
>
> 3. [Smith], in addition to the income from his employment, received between thirty thousand dollars ($30,000.00) and forty thousand dollars ($40,000.00) in income based on the sale of his home in 2019.
>
> 4. Said income was not reinvested in the purchase of a new home but was, instead, used to purchase a vehicle and pay other debts owed by [Smith].
>
> 5. Pursuant to the Commentary 3(A) to the Indiana Child Support Guidelines, irregular income " . . . is includable in the total income approach taken by the Guidelines . . . ."
>
> 6. Utilizing the ratio set forth in the Commentary to the Indiana Child Support Guidelines [See Commentary to Guideline 3A(b)], [Smith]

would owe [LaMar] two thousand three hundred eighty dollars ($2380.00) of the income earned from the sale of his residence in 2019.

7. Two thousand three hundred eighty dollars ($2380.00) expressed as weekly gross income is forty-six dollars ($46.00).

8. This weekly amount is in addition to [Smith's] gross weekly income from his employment of six hundred eighty-six dollars ($686.00) and results in a total gross weekly income of seven hundred thirty-two dollars ($732.00).

9. Effective February 21, 2020, [Smith's] weekly child support obligation is modified to seventy-four dollars ($74.00).

10. [Smith] has a child support arrearage obligation in excess of eleven thousand dollars ($11,000.00).

11. The Court, therefore, finds that in addition to [Smith's] modified weekly child support obligation of seventy-four dollars ($74.00), [Smith] shall pay an additional seventy dollars ($70.00) per week toward said arrearage until paid in full. [Smith's] total weekly support obligation is, therefore, one hundred forty-four dollars ($144.00).

Appellant's Appendix Volume II at 32-33. The court attached a child support obligation worksheet which included a weekly gross income for Smith of $732, a weekly gross income for LaMar of $731, an adjustment for LaMar's payment of weekly health insurance premiums of $23.38, an adjustment for a parenting time credit for Smith, and Smith's weekly support obligation of $74. The court also denied Smith's Motion to Re-Open Evidence.

### Discussion

LaMar has not filed an appellee's brief, and we need not undertake the burden of developing arguments for her. *See Meisberger v. Bishop*, 15 N.E.3d 653, 656 (Ind. Ct. App. 2014). We apply a less stringent standard of review and reverse

if Smith establishes *prima facie* error. *See id*. *Prima facie* is defined as "at first sight, on first appearance, or on the face of it." *Graziani v. D & R Const.*, 39 N.E.3d 688, 690 (Ind. Ct. App. 2015).

[12] Smith maintains there was insufficient evidence to support the amount of his arrearage and the trial court erred in ordering him to pay an additional $70 weekly towards his arrearage. He also argues the court should not have included $46 in his weekly gross income due to the sale of his house and the proceeds were used to pay off his debt, cannot become available again as he has no other house to sell, are unavailable for his immediate use, and do not constitute actual income.

[13] We set aside child support modifications where they are clearly erroneous. *Lea v. Lea*, 691 N.E.2d 1214, 1217 (Ind. 1998). Findings are clearly erroneous when the record contains no facts to support them either directly or by inference. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). Ind. Code § 31-16-8-1 governs modification of child support orders and provides in part:

> (a) Provisions of an order with respect to child support . . . may be modified or revoked.
>
> (b) Except as provided in section 2 of this chapter, and subject to subsection (d), modification may be made only:
>
> > (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
> >
> > (2) upon a showing that:
> >
> > > (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent

> (20%) from the amount that would be ordered by applying the child support guidelines; and
>
> (B)      the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[14] Indiana Child Support Guideline 3A(1) states "weekly gross income" is defined "as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and the value of 'in-kind' benefits received by the parent" and includes income "from salaries, wages, commissions, bonuses, overtime, . . . [and] capital gains . . . ."

[15] The Commentary to Guideline 3A provides that "[t]here are numerous forms of income that are irregular or nonguaranteed, which cause difficulty in accurately determining the gross income of a party" and "[o]vertime, commissions, bonuses, . . . [and] voluntary extra work and extra hours worked by a professional are all illustrations." Subsection 2(b) to Commentary to Guideline 3A. It provides "[c]are should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled." *Id.*

[16] This Court has held that "'actual income' as used in the Guidelines necessarily implies that the income be not only existing in fact but also currently received by the parent and available for his or her immediate use." *Carmichael v. Siegel*, 754 N.E.2d 619, 628 (Ind. Ct. App. 2001).

[17] The record reveals Smith's testimony that he probably received over $30,000 when he sold his house. The trial court included an amount of $46 in Smith's weekly gross income attributable to the sale. However, Smith's receipt of funds was a one-time event, not regular or dependable income, when he closed on the sale of his house. As the Commentary emphasizes, "[c]are should be taken to set support based on dependable income." Subsection 2(b) to Commentary to Guideline 3A. Moreover, the evidence does not establish the extent to which the proceeds of the sale constituted income. While weekly gross income may include capital gains, the evidence does not reveal the prices at which Smith purchased and sold his home or establish that the sale resulted in a gain. Further, while Lamar's counsel phrased its question to Smith as how much "of a profit" he received from the sale, *see* Transcript Volume II at 23, Smith's testimony and responses at least imply that he was referring to the total proceeds he received. Smith testified that he had a home mortgage, and the proceeds he received represent equity by making mortgage payments but not necessarily a gain.[3] Smith testified that he used the sale proceeds to eliminate his car payment, pay off medical and credit card debt, and pay some child support. Based on the record before us, we conclude Smith has established *prima facie* error. We reverse the court's findings that Smith's weekly gross income includes $46 attributable to the sale of his house.

---

[3] Also, there is no assertion Smith held the house for business purposes. *See Bass v. Bass,* 779 N.E.2d 582, 594 (Ind. Ct. App. 2002) (the sale of business property may impact a parent's income under Child Support Guideline 3(A)(2)), *trans. denied.*

[18] In addition, the court found Smith's arrearage to be in excess of $11,000. However, the only evidence of the arrearage was LaMar's testimony that the arrearage had increased since April of 2018 and "may have grown to more than $20,000.00." *Id.* at 36-37. Smith indicated he had not made all of his support payments on time but testified as to his various payments in December 2019 through February 2020. Further, the court ordered Smith to pay an additional $70 per week toward his arrearage for a total weekly payment of $144. Thus, while the court reduced Smith's basic weekly child support obligation of $129.15 by over forty percent, it reduced his total weekly obligation of $150 by only four percent. The court did not make any findings that, although its application of the child support guidelines called for a significant decrease of his basic weekly child support obligation, Smith nevertheless had an ability to pay an additional $70 weekly toward his arrearage.

[19] Based on the foregoing, we remand with instructions to enter an amended child support modification order which sets Smith's basic weekly child support obligation, determines the exact amount of his arrearage, and sets a reasonable amount that he must pay weekly toward the arrearage based on his weekly income.

[20] Reversed and remanded.

Vaidik, J., and Pyle, J., concur.