# FOR PUBLICATION



FILED
Sep 10 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

MYRON JAY RICKMAN
Bunker Hill, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MYRON JAY RICKMAN, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 27A02-1211-DR-950 |
| | ) | |
| SHEILA RENA RICKMAN, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE GRANT CIRCUIT COURT
The Honorable Mark E. Spitzer, Judge
Cause No. 27C01-0603-DR-181

**September 10, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Myron Jay Rickman, *pro se*, appeals the trial court's denial of his petition for modification of visitation order and denial of his motion to correct error. Rickman raises one issue which we revise and restate as whether the court erred in denying Rickman's petition for modification of visitation order and motion to correct error. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On May 4, 1996, Rickman and Sheila Rickman were married and had one child, M.R., who was born on November 26, 1996.[1] On June 5, 1997, Sheila filed a petition for dissolution of marriage and petition for joint preliminary injunction and temporary restraining order. In February 1998, the court appointed a special advocate (a "CASA") for M.R. On March 25, 1998, the court terminated restricted visitation.

On November 23, 1998, the court entered a custody and visitation decree which stated that the CASA recommended that Sheila have sole legal custody of M.R. and that Rickman "be granted supervised visitation on the basis of the CASA's investigation into three (3) alleged child molestation reports brought against" Rickman. Appellant's Appendix at 33. The court granted Sheila sole legal and physical custody of M.R. and gave Rickman supervised visitation.

On July 16, 1999, the CASA filed an emergency request for modification of visitation between M.R. and Rickman. On July 19, 1999, the court granted the CASA's request and terminated visitation between M.R. and Rickman pending a hearing on

---

[1] Rickman states that Sheila was granted a name change for M.R. to M.J., but does not cite to the record for such a name change.

August 23, 1999.  Following the hearing, on August 26, 1999, the court suspended Rickman's visitation rights.

In 2000, Rickman was sentenced to an aggregate term of fifty years for eight counts of child molesting as class A felonies, child molesting as a class C felony, and criminal confinement as a class C felony.[2]  See Rickman v. State, No. 27A04-1002-CR-80, slip op. at 3 (Ind. Ct. App. August 5, 2010).

On September 20, 2012, Rickman, *pro se*, filed a verified petition for modification of visitation order.  He requested that the court grant him telephone access with M.R. and communication via mail.  Rickman also suggested that "any/all determination of his modification (of visitation) request be conveyed directly to [M.R.] by the court, in camera, so as to preclude parental pressure."  Appellant's Appendix at 41.  On September 27, 2012, the court denied Rickman's petition without a hearing.  The chronological case summary ("CCS") contains an entry which states: "The Court, having reviewed [Rickman's] Verified Petition for Modification of Visitation Order, now denies such petition without hearing.  [Rickman] is incarcerated at the Indiana Department of Corrections on Child Molesting charges."  Id. at 17.

On October 24, 2012, Rickman filed a motion to correct error.  He alleged that the court erred in utilizing his incarceration "as a premise for denying his visitation right(s), in toto, . . . via the Indiana Parenting Time Guidelines" and that the trial court did not find nor did the State assert "that the [child molesting] charge[s were] in any way associated

---

[2] The victim of Rickman's offenses was not M.R.  Rickman, slip op. at 2-3.

with his own child." Id. at 44. On October 30, 2012, the court denied Rickman's motion to correct error.

## DISCUSSION

Before addressing Rickman's arguments, we note that Sheila did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes *prima facie* error. Zoller v. Zoller, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. Wright v. Wright, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002). However, questions of law are still reviewed *de novo*. McClure v. Cooper, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

The issue is whether the court erred in denying Rickman's petition for modification of visitation order and motion to correct error. A decision about parenting time requires us to give foremost consideration to the best interests of the child. Perkinson v. Perkinson, 989 N.E.2d 758, 761 (Ind. 2013). Generally, parenting time decisions are reviewed for an abuse of discretion. Id. If the record reveals a rational basis for the trial court's determination, there is no abuse of discretion. In re Paternity of G.R.G., 829 N.E.2d 114, 122 (Ind. Ct. App. 2005). We will not reweigh evidence or reassess the credibility of witnesses. Id. We review a trial court's denial of a motion to correct error for an abuse of discretion, reversing only where the trial court's judgment is

4

clearly against the logic and effect of the facts and circumstances before it or where the trial court errs on a matter of law. Perkinson, 989 N.E.2d at 761.

Rickman argues that the Indiana Parenting Time Guidelines encourage communication with a child by telephone and mail and that "[t]his is exactly what [he] is requesting if . . . [M.R.] is receptive." Appellant's Brief at 8. He contends that "the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development." Id. (citing Ind. Code § 31-17-4-2). He requests that we remand this case to the trial court with instructions that the court conduct an in camera interview and notify the parties of M.R.'s decision as to his desire to have communication with him.

To the extent that Rickman suggests that the trial court did not make the requisite finding under Ind. Code § 31-17-4-2, we observe that the statute governs the modification, denial, and restriction of parenting time rights and provides:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Ind. Code § 31-17-4-2. The trial court did not make any finding that a restriction on Rickman's parenting time consisting of telephone and mail contact might endanger M.R.'s physical health or significantly impair his emotional development, as required by Ind. Code § 31-17-4-2.

To the extent that Rickman cites the Indiana Parenting Time Guidelines, we observe that the Guidelines provide that "[b]oth parents shall have reasonable phone access to their child" and "[a] parent and a child shall have a right to communicate privately by . . . cards, letters, and packages, without interference by the other parent." Ind. Parenting Time Guideline I(A). At the time that Rickman filed his petition, Part C of the Preamble of the Parenting Time Guidelines provided:

> These Guidelines are applicable to all child custody situations, including paternity cases and cases involving joint legal custody where one person has primary physical custody. However, they are not applicable to situations involving family violence, substance abuse, risk of flight with a child, *or any other circumstances the court reasonably believes endanger the child's physical health or safety, or significantly impair the child's emotional development*. In such cases one or both parents may have legal, psychological, substance abuse or emotional problems that may need to be addressed before these Guidelines can be employed. The type of help that is needed in such cases is beyond the scope of these Guidelines.
>
> * * * * *
>
> There is a presumption that the Indiana Parenting Time Guidelines are applicable in all cases covered by these guidelines. Any deviation from these Guidelines by either the parties or the court must be accompanied by a written explanation indicating why the deviation is necessary or appropriate in the case.
>
> *Commentary*
>
> *The written explanation need not be as formal as Findings of Fact and Conclusions of Law; however, it must state the reason(s) for the deviation.*

(Emphasis added) (subsequently amended January 4, 2013, effective March 1, 2013).

The question to be addressed, then, is whether the Guidelines apply to this situation. As noted, the CCS entry is devoid of explanation and contains no finding that there are circumstances which "the court reasonably believes endanger the child's

6

physical health or safety, or significantly impair the child's emotional development."
Preamble of the Parenting Time Guidelines.

We note that absent potential endangerment or significant impairment of the child's health, safety, or emotional development, the plain language of the Parenting Time Guidelines presumes that the Guidelines would apply in this case. Further, the Indiana Supreme Court has implied that the Parenting Time Guidelines apply when one parent is incarcerated. Specifically, in Clark v. Clark, 902 N.E.2d 813, 814 (Ind. 2009), the Indiana Supreme Court addressed whether incarceration constituted a substantial change in circumstances justifying modification of an existing child support obligation. In its discussion, the Court held that "[s]trengthening marriages and relationships between children and non-custodial parents has emerged as a national strategy for enhancing the well-being of children." 902 N.E.2d at 817 (noting: "*See* Preamble for Ind. Parenting Time Guidelines (2009); U.S. Government Accountability Office, *Healthy Marriage and Responsible Fatherhood Initiative: Further Progress Is Needed in Developing a Risk–Based Monitoring Approach to Help HHS Improve Program Oversight* (2008), http://www.gao.gov/new. items/d081002.pdf; Responsible Fatherhood and Healthy Families Act of 2007, S. 1626, 110th Cong. (2007) (introduced by Senators Evan Bayh and Barack Obama specifically discussing the pressures on incarcerated parents of the child support system)").

The CCS entry related to the denial of Rickman's petition states only that the petition was denied without a hearing and that Rickman was incarcerated on child molesting charges. That statement is factual and does not constitute a sufficient written

explanation indicating why the petition was denied or whether it was denied pursuant to Ind. Code § 31-17-4-2, or whether the court considered the Parenting Time Guidelines. In either event, a factual basis and a finding as to potential endangerment of M.R.'s physical health or safety or significant impairment of his emotional development are necessary.

If on remand, the trial court determines the Guidelines to be applicable, it must then proffer an explanation for its departure from the Guidelines. Thus, the trial court must reflect upon the best interests of the child and the possible consequences of its departure from the provisions of Indiana Parenting Time Guideline I(A). Doing so would enable us to thoroughly and appropriately review the trial court's deviation and the reasons behind it.

Under these circumstances and recognizing that Sheila did not file an appellee's brief, we remand for the trial court to provide a written explanation for its reasons for denying the petition or to conduct other proceedings consistent with this opinion.

For the foregoing reasons, we reverse the trial court's denial of Rickman's petition for modification of visitation and remand for proceedings consistent with this opinion.

Reversed and remanded.

NAJAM, J., and MATHIAS, J., concur.