**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 14 2015, 10:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JON T. PACTOR**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERRY MCMILLIAN, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1405-DR-328 |
| | ) | |
| DONNA MCMILLIAN, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather Welch, Judge
The Honorable Jeffrey L. Marchal, Commissioner
Cause No. 49D12-1108-DR-30922

**January 14, 2015**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Terry McMillian appeals the trial court's dissolution decree in his divorce from Donna McMillian, as well as its ruling on his motion to correct error. We reverse and remand.

**Issues**

The issues before us are:

I.      whether the trial court properly divided the marital property unequally in favor of Donna; and

II.     whether the trial court properly calculated a child support arrearage that Terry owed Donna.

**Facts**

On August 12, 2011, Donna filed a petition to dissolve her twenty-two year marriage to Terry. The parties have five children, born in 1995, 1997, 1999, 2002, and 2005. On October 12, 2011, the trial court entered a preliminary order requiring Terry to pay $100 per week in child support.

On December 3, 2012, Donna filed a contempt petition against Terry, alleging he had failed to pay any child support. The motion alleged that Terry was in arrears in the amount of $6,300, which would equal sixty-three weeks of non-payment of support. December 3, 2012 is approximately sixty weeks after October 12, 2011, and approximately sixty-eight weeks after August 12, 2011. Although it is unclear from the record provided to us, it appears the trial court held Terry in contempt. Beginning in February 2013, Terry's wages were subject to automatic withholding for child support, and he has been current on his support payments since then.

2

The trial court conducted a final dissolution hearing on March 4, 2013. Donna was represented by counsel, while Terry appeared pro se. At that time, evidence was presented that Donna earned $1,247.34 per week from her job at Eli Lilly, while Terry earned $850.50 per week from his job at Federal Express. Additionally, Donna submitted a financial declaration showing an Eli Lilly 401(k) account with a gross value of $33,000, less a loan against it of $12,000, for a net value of $21,000. Donna also testified that she was vested in an Eli Lilly pension, but she did not know its value or future payment amounts. Terry's financial declaration indicated that he had two retirement accounts through Federal Express, with a total net value of approximately $11,000. There also was evidence that each party owned a vehicle, though their values were unclear. There was no marital residence or any other significant assets. Donna also requested payment of attorney fees from Terry because of his uncooperativeness during discovery.

On April 9, 2013, the trial court entered its final dissolution decree. In part, the trial court ordered that Terry's child support obligation be increased to $143.40 per week, effective retroactively to the date of the filing of the dissolution petition, August 12, 2011. The trial court also found that Terry was in arrears in his support payments in the amount of $11,439 and ordered that Terry pay an additional $16.60 per week toward this arrearage. The trial court did not attempt to value the parties' retirement accounts or any other assets and simply ordered that each party would retain his or her separate accounts and vehicles.[1]

---

[1] The trial court stated in its order that the value of the parties' retirement accounts was "not known," but it appears the parties financial declarations listing those accounts' approximate values were before the court. App. p. 51.

It stated, "to the extent that an unequal division of assets has been created by . . . allowing each party to maintain his or her own retirement accounts, the Court finds that such an unequal division is justified given Father's repeated delays in completing discovery." App. p. 51. It also ordered Terry to pay $500 in attorney fees to Donna's attorney.

Terry timely filed a motion to correct error. In it, Terry asserted that the trial court had erroneously calculated his child support arrearage and that it had improperly made the increase in his support obligation retroactive to the filing of the dissolution petition. Terry also contended that the trial court had divided the marital property in an unequal fashion in Donna's favor and that his alleged uncooperativeness during discovery was not a proper basis for rebutting the presumption in favor of an equal division. In response to this motion, the trial court permitted the parties to submit additional evidence regarding the value of the retirement accounts. Donna conceded that the trial court could not rely upon Terry's uncooperativeness during discovery to justify an unequal division of property but argued that there were other reasons to support an unequal division of property.

On April 4, 2014, the trial court entered a ruling granting Terry's motion to correct error in part and denying it in part. Specifically, the trial court ordered that the increase in Terry's child support obligation became effective on the date of the dissolution decree, not the date of the filing of the dissolution petition. However, it concluded that Terry owed an arrearage of $11,805, more than it found in the original dissolution decree. The trial court reached this figure by multiplying $100 times 125 weeks, which it said represented the number of weeks between the provisional order of October 12, 2011, and the final hearing date of March 4, 2013, less $695 Terry had paid in support before the final hearing.

4

With respect to the marital property, the trial court placed a value on Donna's 401(k) of $27,050.01. It also noted Donna's pension, in which she became vested in May 2008, and the payout amounts she would be entitled to from it in the future, but did not place a current value on the pension. There was no evidence presented as to the pension's current actuarial value. As for Terry's retirement accounts, the trial court attributed a value of $6,070.57 to one plan and $4,168.39 to a second plan. The trial court reaffirmed its decision to separately award each party his or her own retirement accounts, stating:

> that an unequal division is justified in that both parties have incurred loans against their respective retirement accounts, that there is no evidence to show that the respective loans benefitted the marriage, that neither party contributed to the retirement plans of the other, the economic circumstances of each party at the time the disposition of any property becomes effective, and the lack of significant disparity in the earnings ability of each party.

Id. at 17. Terry now appeals.

**Analysis**

The trial court here entered sua sponte findings to accompany both the original dissolution decree and its ruling on the motion to correct error. In such a situation, the specific factual findings control only the issues that they cover, and a general judgment standard applies to issues upon which there are no findings. Stone v. Stone, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013). "It is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record." Id. We may affirm a general judgment with sua sponte findings upon any legal theory supported by the

5

evidence. Id. Sua sponte findings control as to the issues upon which the court has found but they do not otherwise affect our general judgment standard of review. Id.

In reviewing the accuracy of findings that have been entered, we first consider whether the evidence supports them. Id. Second, we consider whether the findings support the judgment. Id. "We will disregard a finding only if it is clearly erroneous, which means the record contains no facts to support it either directly or by inference." Id. A judgment also is clearly erroneous if it relies on an incorrect legal standard, and we will not defer to a trial court's legal conclusions. Id. at 998-99. We give due regard to the trial court's ability to assess the credibility of witnesses and will not reweigh the evidence, and we must consider only the evidence most favorable to the judgment along with all reasonable inferences drawn in favor of the judgment. Id. at 999.

Additionally, we "'give considerable deference to the findings of the trial court in family law matters . . . .'" Id. (quoting MacLafferty v. MacLafferty, 829 N.E.2d 938, 940 (Ind. 2005)). This deference is a reflection that the trial court is in the best position to judge the facts, ascertain family dynamics, and judge witness credibility and the like. Id. "'But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result.'" Id. (quoting MacLafferty, 829 N.E.2d at 941).

Similarly, we review a trial court's ruling on a motion to correct error for an abuse of discretion. Rickman v. Rickman, 993 N.E.2d 1166, 1168 (Ind. Ct. App. 2013). We will reverse such a ruling only where the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where it has erred on a matter of law. Id.

Finally, we note that Donna has not filed an appellee's brief. In such a case, we need not bear the burden of developing an argument on behalf of the appellee. Morgal-Henrich v. Henrich, 970 N.E.2d 207, 210 (Ind. Ct. App. 2012). We will reverse if the appellant establishes prima facie error, which means error "'at first sight, on first appearance, or on the face of it.'" Id. (quoting Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1068 (Ind. 2006)). If an appellant does not meet this burden, we will affirm. Id.

### I. Property Distribution

First, Terry argues the trial court erred in deviating from an equal division of the marital property by awarding Donna the full value of her Lilly 401(k) and pension accounts. Terry's arguments focus only upon the parties' respective retirement accounts, as there is no clear evidence as to the value of the parties' other assets, which were limited to two vehicles and personal belongings, with the vehicles being roughly equal in value. Additionally, there was no marital debt to divide; the only evidence of a debt was related to rent owed at the parties' previous residence, and Donna discharged that debt through bankruptcy. The trial court also expressly found that the parties' loans against their respective retirement accounts did not benefit the marriage and, therefore, they were not included as marital debts. The trial court valued Donna's 401(k) plan at $27,050.01, while it valued Terry's retirement accounts at a total of $10,238.96. The total value of these accounts was $37,288.97, and Donna was awarded 72.5% of that amount. Additionally, Donna had a pension with Lilly that vested before the parties separated, which requires its inclusion as a marital asset. See Bingley v. Bingley, 935 N.E.2d 152, 155 (Ind. 2010). Although there is no evidence of the pension's current actuarial value as a whole, there is

7

evidence that it would later pay Donna anywhere from $208.70 to $667.81 per month, depending on when she retired or terminated her employment with Eli Lilly.[2] Terry does not have a defined benefit pension of this kind. The existence of Donna's vested pension further throws the division of the marital estate out of balance.

An equal division of marital property is presumptively just and reasonable, but this presumption may be rebutted if a party presents relevant evidence regarding the following factors: (1) each spouse's contribution to the acquisition of property; (2) acquisition of property through gift or inheritance prior to the marriage; (3) the economic circumstances of each spouse at the time of disposition; (4) each spouse's dissipation or disposition of property during the marriage; and (5) each spouse's earning ability. Ind. Code § 31-15-7-5.[3] If a trial court orders an unequal division, it must consider all of the factors set forth in the statute. Love v. Love, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). Although a trial court need not explicitly address each statutory factor when it unevenly divides property, a reviewing court must be able to infer that all the statutory factors were considered. Id. We must review a trial court's division of property as a whole and not item by item. Id. (citing Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002)). We will reverse a trial court's division of property only if there is no rational basis for the award. Id.

[2] Donna and her attorney stated at the original dissolution hearing that they had been unable to obtain pension information from Eli Lilly, but Terry was able to do so from an Eli Lilly human resources employee before the motion to correct error hearing.

[3] At the motion to correct error hearing, Donna conceded that a spouse's alleged uncooperativeness in discovery during dissolution proceedings does not justify an unequal division of marital property. Such conduct may, of course, warrant other sanctions, such as an award of attorney fees. See Hawblitzel v. Hawblitzel, 447 N.E.2d 1156, 1162-63 (Ind. Ct. App. 1983).

8

Here, one of the trial court's stated reasons for unequally dividing the marital estate in favor of Donna was that neither party "contributed" to the other party's retirement accounts. We put "contributed" in quotes to emphasize that the trial court seems to have taken a too-narrow view on what it means to "contribute" to the accumulation of a marital asset for purposes of dividing marital property. The trial court apparently took "contribute" to mean strictly monetary contributions. In Indiana, however, it is well-settled that, "[m]arriage is to be considered a partnership in which profits are presumed to be shared equally even though one partner contributed more in income." Maloblocki v. Maloblocki, 646 N.E.2d 358, 363 (Ind. Ct. App. 1995). "The income-producing efforts and intangible contributions of both spouses unite to facilitate the acquisition of marital property." Id. Indeed, one spouse's employment decisions—or the amount one decides to contribute to a 401(k), for example—may be based on consideration of the other spouse's tangible and intangible contributions to the marriage. The fact that Donna was able to work at a better-paying job than Terry and to earn better benefits than him does not by itself justify an unequal division of marital assets. See id. (holding that one spouse's contribution of greater share of funds to marriage does not by itself justify an unequal division of marital estate).

There is no evidence in this case or findings by the trial court regarding gifts or inheritances, or waste of marital resources by dissipation. The trial court did state that the economic circumstances of the parties also warranted an unequal distribution of marital assets. However, we are hard-pressed to discern how the parties are unequal economically following this divorce, such as might warrant an unequal division of property. Donna did

9

file bankruptcy to discharge one marital debt. Although a bankruptcy may negatively impact one's credit for several years, there is no evidence in the record or argument by Donna that the harm of filing bankruptcy outweighed the benefits of having the debt discharged. Most importantly, there is no evidence that Donna is facing financial hardships that Terry is not also facing. Each party left the marriage with one vehicle and no residence, neither party was saddled with any marital debts, and the only significant assets were the parties' retirement accounts. Donna's accounts are worth considerably more than Terry's.

Finally, the trial court justified the unequal division of property by referring to "the lack of significant disparity in the earnings ability of each party." App. p. 17. We are confused as to how the parties' having equal earnings ability would justify an unequal division of property. In any event, according to the child support worksheet, Terry earns approximately $44,226 and Donna earns approximately $64,862 per year. That difference means that Donna earns almost fifty percent more than Terry.

Given our prima facie error review of this case and the presumption in favor of an equal division of marital assets, we conclude there is no rational basis for the trial court to have unevenly divided the marital estate. We reverse and remand with instructions that it be evenly divided and that the trial court enter any necessary orders to accomplish an even division. This includes appropriate treatment of Donna's vested pension account. See In re Marriage of Preston, 704 N.E.2d 1093 (Ind. Ct. App. 1999) (discussing various methods for dividing future pension benefits in a dissolution decree); Ryan v. Janovsky, 999 N.E.2d 895 (Ind. Ct. App. 2013) (discussing use of qualified domestic relations order for payment of pension benefits divided years earlier in dissolution decree), trans. denied.

10

## II. Child Support Arrearage

Terry also contends the trial court erred in calculating the amount of his child support arrearage as being $11,805. Decisions regarding child support generally rest within the trial court's sound discretion. Dore v. Dore, 782 N.E.2d 1015, 1018 (Ind. Ct. App. 2003). "We will reverse a trial court's decision in child support matters only for an abuse of discretion or if the trial court's determination is contrary to law." Id.

After hearing Terry's motion to correct error, the trial court adjusted its original dissolution decree to provide that the increase in his support obligation from $100 per week to $143.40 per week did not take effect until the date of the dissolution decree, or April 9, 2013.[4] The trial court further clarified that it was calculating Terry's support arrearage based on a support amount of $100 per week, between the time of the preliminary child support order, or October 12, 2011, and the date of the final hearing, which was held on March 4, 2013. The trial court calculated this time period as 125 weeks. However, this time period clearly is seventy-two weeks and five days. Rounding up, this would be seventy-three weeks, for an arrearage of $7,300 at $100 per week. The trial court found that prior to the final hearing, Terry had paid $695 in support through withholding and payment for one child's prom pictures. $7,300 minus $695 is $6,605. Since the final hearing, Terry has been current on his child support payments. Thus, it is unclear how the trial court arrived at an arrearage amount of $11,805. Terry has established prima facie

---

[4] Because Donna never moved to modify the preliminary support order, the trial court could not make any increase in Terry's support obligation retroactive to a date before the final dissolution decree. See Troyer v. Troyer, 987 N.E.2d 1130, 1141-42 (Ind. Ct. App. 2013), trans. denied.

error on this point.  We reverse the arrearage amount and remand with instructions that it be reduced to $6,605.

## Conclusion

We conclude Terry has established prima facie error in the trial court having unevenly divided the marital estate in favor of Donna and in calculating his child support arrearage.  We reverse and remand for the entry of further orders in compliance with this decision.

Reversed and remanded.

MAY, J., and PYLE, J., concur.