## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 29 2017, 11:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**APPELLANT, PRO SE**

Daniel P. Foster
Carlisle, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Paternity of E.B.:

Daniel P. Foster,

*Appellant,*

v.

Rebecca L. Baugh,

*Appellee.*

September 29, 2017

Court of Appeals Case No.
53A05-1703-JP-562

Appeal from the Monroe Circuit Court

The Honorable Bret Raper, Commissioner

The Honorable Stephen R. Galvin, Judge

Trial Court Cause No.
53C07-1011-JP-845

**Pyle, Judge.**

## Statement of the Case

[1] Daniel Foster ("Father") appeals pro se the trial court's denial of his motion to correct error filed with respect to a judgment declining to order Rebecca Baugh

("Mother") to take the parties' six-year-old daughter, E.B. ("E.B."), to a prison facility for parenting time with Father. Concluding that the trial court did not abuse its discretion, we affirm the denial of Father's motion to correct error.

[2] Affirmed.

# Issue

Whether the trial court abused its discretion in denying Father's motion to correct error.

# Facts

[3] In 2011, Father was convicted of attempting to murder Mother. The underlying facts of that conviction were set forth as follows in Father's direct appeal:[1]

> On April 12, 2010, Rebecca Baugh was pregnant with Foster's child. Baugh and Foster had been arguing over Foster's relationship with another woman. Foster's sister, Heather Foster, and his cousin, Wendy Campbell, were with Baugh and drove to Foster's residence. Campbell was driving the truck, Baugh was sitting in the middle, and Heather was sitting on the passenger side. As they approached the driveway to Foster's residence, Foster stepped from behind a tree, raised a gun, and shot at the truck. The bullet hit the windshield. Campbell decided to get out of the truck, but Baugh and Heather drove away and called the police. When the police arrived, Baugh had

---

[1] Indiana Evidence Rule 201(d) provides that "[j]udicial notice may be taken at any stage of the proceeding," which include appeals. *Banks v. Banks*, 980 N.E.2d 423, 426 (Ind. Ct. App. 2012), *trans. denied*. *See also Fisher v. State*, 878 N.E.2d 457, 462 (Ind. Ct. App. 2007), *trans. denied*, (concluding that this Court could take judicial notice of the record in Fisher's original appeal).

pieces of glass in her ear and on her clothing. Baugh and Heather told the police officers that Foster had shot at the truck. Campbell refused to speak with the officers. The officers were unable to locate the bullet, but a roofer working on a nearby house reported hearing a gunshot. During an interview with police a few days later, Baugh claimed that Foster did not shoot at the truck.

The State charged Foster with three counts of Class A felony attempted murder and three counts of Class C felony criminal recklessness. Foster and Baugh resumed their relationship and, during a bail hearing, Baugh testified that Foster did not shoot the truck. Heather and Campbell also testified at the bail hearing that Foster did not shoot the truck.

At Foster's jury trial, Baugh testified that she lied to the police officers during the second interview and that she lied at the bail hearing. Baugh testified that they decided to claim that a rock damaged the windshield. They fabricated estimates from two windshield repair businesses, including one from Thickstun Glass Company, and the fabricated estimates claimed that the rock was still embedded in the windshield at the time of the estimate. John Chester, a forensic scientist with the Indiana State Police Laboratory, testified that the hole in the windshield was caused by a high-velocity, low-mass impact and that microscopic traces of lead, which were consistent with a bullet, were found in the hole. Another expert, John Larsen, also testified that the windshield was damaged by a bullet. Heather and Campbell testified for Foster, claimed that a rock damaged the windshield, and claimed that they obtained estimates for repairing the windshield, which allegedly still had the rock stuck in it at the time of the estimates. On rebuttal, the State called Thomas Thickstun, the owner of a company that allegedly gave Foster an estimate to repair the windshield. Thickstun testified that his company did not produce Foster's estimate to repair the windshield.

The jury found Foster guilty of Class A felony attempted murder of Baugh and all three counts of Class C felony criminal recklessness. The jury found Foster not guilty of the attempted murder of Heather and Campbell. After Foster's March 2011 sentencing, he filed a motion to correct error based on allegedly newly discovered evidence. Foster submitted affidavits from Heather and Campbell. In her affidavit, Heather claimed that she lied in her testimony at the trial, that Foster did shoot at the truck but that Heather, Campbell, and Baugh were inside of the house at the time, and that she fabricated the windshield estimates. In her affidavit, Campbell claimed that Foster probably did shoot at the truck but that Heather, Campbell, and Baugh were inside of the house at the time and that she lied about a rock hitting the windshield. The trial court denied Foster's motion to correct error.

*Foster v. State*, No. 53A01-1105-CR-222, *2-4 (Ind. Ct. App. Jan 9, 2012).

[4] Foster is currently incarcerated at the Wabash Valley Correctional Facility. In September 2016, Father filed a verified petition for parenting time with E.B. pursuant to INDIANA CODE § 31-14-14-1 wherein he requested "visitation with the minor child." (App. 10).

[5] At a hearing on the petition, Mother testified that she wanted E.B. to maintain a relationship with Father. According to Mother, she had read Father's letters to E.B. and allowed E.B. to speak to Father on the telephone every week. However, after Mother and Father had a disagreement, Father stopped telephoning. E.B. was confused and wondered "why is daddy not calling?" (Tr. 7). Before the disagreement, Mother had also taken E.B. to the correctional facility to visit Father. However, Mother explained that the trip

was expensive because she was "supporting [E.B.] by herself" and that she did not like taking E.B. into the prison. (Tr. 8).

[6] During the hearing, Father asked that he be allowed to send his daughter letters and gifts, such as handkerchiefs with drawings. Father also asked to be allowed to telephone E.B. once a month at an established time. Lastly, Father asked to see his daughter once a month at the prison. He explained that his mother ("Paternal Grandmother") visited once a month and would be willing to transport E.B. to the visit.

[7] Mother agreed to give E.B. letters and gifts sent from the prison and to make E.B. available for a monthly telephone call from Father. She asked the trial court to allow her time to see how the telephone calls went before ordering visitation at the prison. If the telephone calls went well, Mother agreed to take E.B. to the prison to visit with Father one time per month. Mother did not want Paternal Grandmother to transport E.B. to the prison because Paternal Grandmother typically wanted to discuss Father's court case with Mother in front of E.B. Mother explained that she had given Paternal Grandmother three different opportunities to visit with E.B. and had informed Paternal Grandmother that she was not to discuss the case. However, Paternal Grandmother had "held [E.B.] for thirty seconds, passed her to her daughter, and then started going on about [Mother] and how [she had] put her son in prison for the rest of his life . . . ." (Tr. 22).

[8] Father testified that his conviction for attempting to murder Mother had been affirmed on appeal and that he was working on a post-conviction relief petition. He explained that Mother had told two attorneys that she had "lied on [Father] at the trial . . . ." (Tr. 28). Father expected that the post-conviction petition would be ready for filing within a year.

[9] Following the hearing, on January 4, 2017, the trial court issued an order allowing Father to continue to mail letters to E.B. The order also provided that Mother should facilitate one telephonic parenting time visitation on the first Monday of each month. Lastly, the court "decline[d], at [that] time, to require Mother to take [E.B.] to the DOC facility." (App. 10). Specifically, the trial court explained as follows:

> Even though Mother has previously taken the child to see Father on two (2) instances, she indicates that she is not presently comfortable doing so as Father and Father's family members have been 'pressuring' Mother to recant her earlier statements to law enforcement about the crime, which in turn would assist Father in his ongoing Post-Conviction Relief Petition.

(App. 10). The order further explained that the matter of Father receiving parenting time visits at the prison would be revisited at a later date.

[10] Father responded to the trial court's order by filing a motion to correct error wherein he argued that the trial court had improperly restricted his parenting time when it "severely curtailed both [Father's] and [E.B.'s] right to parenting time through visitation, by ordering parenting time, by phone calls and letters only . . . ." (App. 13). According to Father, the trial court had failed to make

the required specific finding of physical endangerment or emotional impairment to justify the restriction as is required by INDIANA CODE § 31-14-14-1. He asked the trial court to reconsider its decision to decline to order Mother to take E.B. to the prison to visit Father.

[11]     In its order on Father's motion to correct error, the trial court conceded that it had failed to "articulate its specific finding of physical endangerment or emotional impairment in the order limiting/restricting [Father's] parenting time visitation." (App. 22). Thereafter, in this regard, the trial court set forth the following specific findings in support of its denial of Father's motion to correct error:

> 10. As noted in the court's 01/04/17 order, Father is serving a lengthy sentence in the Indiana Department of Correction for the criminal offense of attempted murder, and, as previously noted, Mother was Father's intended victim. Father's propensity for violence, as manifested against Mother, causes the court to conclude that Father's unrestricted parenting time with the child would in fact pose a serious threat to the child's physical safety and well-being.

> 11. Additionally, as was noted in the 01/04/2017 order, Father has made repeated attempts to convince Mother to recant her incriminating statements made against Father during the course of Father's underlying criminal cause. Father has filed a Petition for Post-Conviction Relief in his criminal case, and Mother's 'cooperation' is crucial to Father's petition. The court finds Father's actions toward Mother – both the criminal offense itself as well as subsequent communications – to be abhorrent and unacceptable.

12. Father's post-conviction requests of Mother to recant her statements have caused tremendous stress for Mother. Mother is the sole caretaker and provider for the child, and Mother's continued stress from Father's action would most certainly have an adverse impact upon on the child as well.

13. Given Father's apparent indifference to lawful behavior as well as his lack of respect for Mother as evidenced by his requests for Mother to recant, it is reasonable to infer that Father would in likelihood make inappropriate comments/requests to the child during any physical parenting time, urging the child to convince Mother to recant her statements. Thus the court remains convinced that Father's physical contact with the child would endanger the child's emotional wellbeing.

(App. 22-23). Father now appeals the denial of his motion to correct error.

# Decision

[12] At the outset, we note that Mother has failed to file an appellee's brief. When an appellee fails to submit a brief, we need not undertake the burden of developing an argument for the appellee. *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999). Applying a less stringent standard of review, we may reverse the trial court if the appellant can establish *prima facie* error. *Id.* However, we may in our discretion decide the case on the merits. *Kladis v. Nick's Patio, Inc.*, 735 N.E.2d 1216, 1219 (Ind. Ct. App. 2000). We exercise our discretion here to consider the merits of the issue presented in this case.

[13] We further note that Father has chosen to proceed pro se. It is well-settled that pro se litigants are held to the same legal standards as licensed attorneys. *Twin*

*Lakes Reg'l Sewer Dist. v. Teumer*, 992 N.E.2d 744, 747 (Ind. Ct. App. 2013). This means that pro se litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so. *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004). We will not become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Perry v. Anonymous Physician 1*, 25 N.E.3d 103, 105 n. 1 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*.

[14] Turning to the issue in this case, we note that Father appeals the denial of his motion to correct error pursuant to Indiana Trial Rule 59 regarding the trial court's parenting time order. Our standard of review in such cases is well-established. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Old Utica Sch. Pres., Inc. v. Utica Twp.*, 7 N.E.3d 327, 330 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before it or the reasonable inferences therefrom. *Id.*

[15] A decision about parenting time requires us to give foremost consideration to the best interests of the child. *Rickman v. Rickman*, 993 N.E.2d 1166, 1168 (Ind. Ct. App. 2013). Parenting time decisions are generally reviewed for an abuse of discretion. *Id.* If the record reveals a rational basis for the trial court's determination, there is no abuse of discretion. *Id.* We will not reweigh the evidence or reassess the credibility of witnesses. *Id.*

[16] Indiana has long recognized that the right of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents. *Patton v. Patton*, 48 N.E.3d 17, 21 (Ind. Ct. App. 2015). INDIANA CODE § 31-14-14-1, which sets forth the visitation rights of a noncustodial parent in a paternity action, provides that a "non-custodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might: (1) endanger the child's physical health and well-being; or (2) significantly impair the child's emotional development." Even though this statute uses the term "might," this Court has interpreted the statute to mean that a court may not restrict parenting time unless that parenting time would endanger the child's physical health or well-being or significantly impair the child's emotional development. *Walker v. Nelson*, 911 N.E.2d 124, 130 (Ind. Ct. App. 2009). "By its plain language, INDIANA CODE § 31-14-14-1 requires a court to make a specific finding of physical endangerment or emotional impairment prior to placing a restriction on the noncustodial parent's visitation. *In re Paternity of V.A.M.C.*, 768 N.E.2d 990, 1000 (Ind. Ct. App. 2002), *reh'g granted on other grounds by* 773 N.E.2d 359 (Ind. Ct. App. 2002).

[17] Here, Father contends that the trial court "committed a reversible error in restricting [his] parenting time with his minor child because the evidence does not support" the trial court's specific finding of physical endangerment or emotional impairment. (Father's Br. 2). The trial court stated that Father's propensity for violence as manifested against Mother as well as Father's indifference to lawful behavior and his lack of respect for Mother supported its

finding that Father's physical contact with E.B. would physically endanger or emotionally impair the child. Our review of the evidence reveals that Father shot at Mother, his sister, and his cousin while Mother was pregnant with E.B. Mother told the police and then testified at a bail hearing that Father did not shoot at her. At trial, however, she admitted that she had lied during her police interview and at the bail hearing and testified that Father had shot at her. At the hearing on Father's petition, Father testified that Mother had told his post-conviction attorneys that she had lied at trial, suggesting that she had recanted her trial testimony. This evidence supports the trial court's findings and its denial of Father's motion to correct error. We find no abuse of the trial court's decision.

[18]   Affirmed.

Riley, J., and Robb, J., concur.