FILED

Nov 29 2023, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Andrew P. Martin
Sachs & Hess, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Larry D. Stassin
Tanzillo, Stassin & Babcock, P.C.
Dyer, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

Brian D. Roper,

*Appellant-Respondent,*

v.

Ashley D. Roper, n/k/a Ashley
D. Darland,

*Appellee-Petitioner.*

November 29, 2023

Court of Appeals Case No.
23A-DC-750

Appeal from the Lake Circuit
Court

The Honorable Marissa
McDermott, Judge

The Honorable Samantha
Wuletich, Magistrate

Trial Court Cause No.
45C01-2005-DC-265

**Opinion by Judge Kenworthy**
Judges Bailey and Tavitas concur.

**Kenworthy, Judge.**

## Case Summary

[1] After Brian Roper ("Father") and Ashley Darland ("Mother") divorced, they

shared joint legal and physical custody of their minor child ("Child") and

exercised parenting time on a four days on/four days off schedule. In March 2023, the trial court granted Mother's petition to modify custody and parenting time and ordered Father's parenting time to be supervised. Father appeals and raises one issue: Did the trial court err by restricting his parenting time without providing a sufficient written explanation to justify deviating from the Indiana Parenting Time Guidelines ("Guidelines")? We conclude the trial court's order makes the appropriate finding and sufficiently explains its parenting time order. Therefore, we affirm.

## Facts and Procedural History

[2] Father and Mother were divorced in 2021 when Child was two years old. The trial court found joint legal and physical custody was in Child's best interest "at this point in time while the child is not in school and based on the age of the child and the distance between the parties." *Appellant's App. Vol. 2* at 45.[1] The court also continued the parenting time arrangement the parties had been exercising, "with a four-on-four-off schedule, exchanging the child every fifth day[.]" *Id.*

[3] In early 2022, Mother petitioned for modification of custody and parenting time, anticipating Child would attend preschool in the fall and the "current parenting schedule will no longer be feasible." *Id.* at 49. The parties agreed to the appointment of a guardian ad litem ("GAL") to "investigate and report to

---

[1] While the dissolution was pending, Father had moved to Illinois.

the court on the issues related to" the petition. *Id.* at 51. At some point after this, Father came to believe that one of Mother's relatives had touched Child inappropriately.

[4] A final hearing on Mother's modification petition was set for March 13, 2023. On March 3, Mother and the GAL jointly filed a verified petition for an emergency order temporarily restricting Father's parenting time because of Father's erratic behavior and the unilateral actions he took in relation to his belief that Child had been sexually abused.[2] Father was due to exercise his parenting time from March 6 to March 10. On March 5, the trial court ordered that Child not be returned to Father's care until after the final hearing.

[5] Father, representing himself; the GAL; and Mother all testified at the hearing on March 13. The GAL testified that Father's allegations had been investigated by three entities in two states and none had substantiated abuse. She expressed "serious concerns" about Father's mental state, *Tr. Vol. 2* at 31, because he "was unwilling to face the facts in front of him[,]" *id.* at 16. She believed he presented a "credible threat" to Child's emotional well-being because he has a "one-track mind believing that this abuse occurred by this person, and programming his daughter to think that, to think that she's in danger, to think that somebody hurt her." *Id.* at 30–31. She recommended Mother have sole

---

[2] In addition to Father making three reports of abuse and taking Child for a forensic interview and a medical evaluation without informing Mother, Father's father conducted surveillance at Mother's house to see if her relative was visiting, and Father "interrogat[ed]" Child in a videotaped conversation, asking leading questions repeatedly until Child gave him the answer he seemed to want. *Tr. Vol. 2* at 31.

legal and physical custody of Child and Father's parenting time be supervised at an appropriate facility. The GAL did not believe Father's parents—with whom he lived—would be appropriate supervisors because "they are fairly blind to what's happening." *Id.* at 32. Father testified he "one hundred percent believe[d]" Mother's relative has touched Child but asserted he never brings it up with Child and he is not a threat to her. *Id.* at 141. Father told the court he had been seeing a psychotherapist for four or five months.

[6] At the end of the hearing, the trial court explained to Father:

> The question is, despite that you and your daughter who are so bonded and she loves you so much and you love her so much, clearly. The question is, does that love you have for her, that fatherly instinct to protect her, has that caused you to go down a path that is causing her harm. . . . Do I think you would do anything to intentionally harm your child? I do not. Do I think that you have found yourself in a rabbit hole and that you are so intent on proving a point and proving that [Mother's relative] did something that you are willing to do, and interact with your child in a way that you might not even . . . realize is not healthy.

*Id.* at 168–69.

[7] Ruling from the bench, the trial court granted Mother sole legal and primary physical custody of Child and ordered Father's parenting time to be once a week, supervised at a facility. The trial court set a hearing in sixty days to revisit the supervision requirement and made an extensive statement explaining the court's ruling and expectations for those sixty days:

[B]ased on what I saw here today, [Father,] and based on some of the reports from [the GAL] and what's been going on, I have deep concern for you[.] . . . [M]aybe we can get you into a better mental spot.

* * *

[I]f you want to go back to the arrangement that you have where you see [Child] at your parents' house, . . . during [the next sixty days] I expect you to continue whatever treatment plan you've got going with your current doctor, I want you to keep doing that. . . . You have to follow all his recommendations, because . . . this person is the one who can best dictate what is going to make you healthiest and most stable. . . . I need you to show to me that you're doing that, so that then I feel comfortable saying, okay, you know what, we did the supervised visits and Dad is towing the line, he's doing – he came in on March 13th and he sat there and told me "I will do whatever it takes to have my kid and actually he did it."  The next time I see you, I would like to be able to say that.

*Id.* at 188–90.  The trial court also prohibited contact between Child and Mother's relative and admonished Father not to undertake his own investigation about whether that order was being followed because "[i]t's not healthy for you [or] for this family unit as you move forward."  *Id.* at 191.

[8]     Mother's counsel reduced the ruling to a written order which the trial court signed.  The order states, in pertinent part:

1. There has been a change in circumstances that warrants modification of custody, and it is in the best interests of the minor child that Mother shall have full legal and physical

custody. Unsupervised parenting time with Father would cause harm at this time.

* * *

3. Father's parenting time shall be supervised at a facility for at least the next 60 days, one time per week, based upon the facility schedule and availability.

*Appellant's App. Vol. 2* at 29. Father now appeals.

## The Trial Court's Parenting Time Order is Sufficient

[9] Although Father addresses many facets of the trial court proceedings in his briefing,[3] he does not challenge the underlying merits of the trial court's parenting time decision; that is, he does not claim the evidence is insufficient to support the trial court's finding of endangerment. *See Appellant's Br.* at 15. Instead, Father specifically raises only one issue: "Did the Trial Court err restricting Father's parenting time without rendering a written explanation to justify the deviation from the presumptive schedule set forth in the Indiana

---

[3] For instance, although Father says he is not appealing the *ex parte* temporary emergency order—and acknowledges he *cannot* appeal that order as it is moot—Father addresses the circumstances surrounding this order at length and appears to claim its issuance was a due process violation. *See Appellant's Br.* at 12; *Reply Br.* at 6–7. Father also claims, without independent evidence to support his claim, that the *ex parte* order shows he was denied a fair modification hearing because the trial court had pre-judged the outcome. *See Appellant's Br.* at 12, 16–18. Nonetheless, we take Father at his word that this is "[i]ntended as [b]ackground [i]nformation" and do not separately address these or any other potential issues Father's brief appears to raise. *Reply Br.* at 6.

Parenting Time Guidelines?" *Id.* at 4. Accordingly, that is the only issue we address.

[10] In making and reviewing parenting time decisions, courts are required to "give foremost consideration to the best interests of the child." *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013) (quoting *Marlow v. Marlow*, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998), *trans. denied*). Parenting time decisions are reviewed for an abuse of discretion, and because they typically turn on the facts, will be set aside only when they are clearly erroneous. *Id.*

[11] Indiana recognizes the right of noncustodial parents "to visit with their children is a 'sacred and precious privilege.'" *Appolon v. Faught*, 796 N.E.2d 297, 300 (Ind. Ct. App. 2003) (quoting *McCauley v. McCauley*, 678 N.E.2d 1290, 1292 (Ind. Ct. App. 1997), *trans. denied*). A child "has the correlative right to receive parenting time from the noncustodial parent because it is presumed to be in the child's best interest." *Perkinson*, 989 N.E.2d at 764; *see* Ind. Parenting Time Guidelines § I(E)(5). To this end, the Guidelines "represent the minimum time a parent should have to maintain frequent, meaningful, and continuing contact with a child." Ind. Parenting Time G., Preamble. "There is a presumption that the [Guidelines] are applicable in all cases" and deviations from the Guidelines that result in parenting time less than the minimum time set forth "must be accompanied by a written explanation indicating why the deviation is necessary

or appropriate in the case." Ind. Parenting Time G., Preamble C.3.[4]  Although the court may modify a parenting time order whenever modification would serve the best interests of the child,

> the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Ind. Code § 31-17-4-2 (2005).[5]

[12]  Not every deviation below the minimum parenting time recommended by the Guidelines is a "restriction" of parenting time requiring a finding of endangerment or impairment.  We have previously recognized the distinction:

> [T]here is a difference between a "restriction" of parenting time, which requires a finding of endangerment or impairment, and a "deviation" from the parenting time contemplated by the Guidelines, which requires only a written explanation from the trial court.

---

[4] The Guidelines also state they "are not applicable to situations involving family violence, substance abuse, risk of flight with a child, or any other circumstances the court reasonably believes endanger the child's physical health or safety, or significantly impair the child's emotional development."  *Id.*, Preamble C.1.  Although the latter part of this provision tracks the language of Section 31-17-4-2, the Guidelines contain many provisions that are applicable to a parent exercising any parenting time.  Therefore, the Guidelines as a whole are applicable whenever a parent has been awarded any parenting time, even if restricted under Section 31-17-4-2 to less than the minimum time set forth in the schedules.

[5] Although the statute uses the word "might," this language has been interpreted to mean that a court may not restrict parenting time unless that parenting time "would" endanger the child's health or impair the child's emotional development.  *See Stewart v. Stewart*, 521 N.E.2d 956, 960 n.3 (Ind. Ct. App. 1988), *trans. denied*.

*Randolph v. Randolph*, 210 N.E.3d 890, 898 (Ind. Ct. App. 2023). Parenting time rights are "restricted" when they are "curtailed in an unreasonable manner." *In re Paternity of J.K.*, 184 N.E.3d 658, 667 (Ind. Ct. App. 2022); *see In re Paternity of Snyder*, 26 N.E.3d 996, 999 (Ind. Ct. App. 2015) (concluding a finding of endangerment or impairment was required to restrict father from telling child he is her biological father); *cf. Randolph*, 210 N.E.3d at 899 (concluding a statutory finding of endangerment or impairment was not required because "[t]his is not a case where [f]ather's parenting time was eliminated, required to be supervised, or significantly deviated from the Guidelines"). An order for supervision of parenting time is a restriction required to be justified by a finding of endangerment or impairment. *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013).

[13]     If the trial court simply deviates from the amount of parenting time recommended by the Guidelines, it must explain why deviation is appropriate. If, however, the trial court *restricts* parenting time, it must also make the finding required by Section 31-17-4-2. Generally, where a trial court restricts parenting time pursuant to Section 31-17-4-2, the finding of endangerment or impairment *is* the explanation for a deviation from the Guidelines.

[14]     To the extent Father argues the trial court's finding was insufficient, we disagree. Father argues the order should have read, "'[u]nsupervised parenting time with Father will cause harm at this time because . . .,' followed by an explanation of the conduct that the Court found would cause harm, in sufficient detail wherein Father understood what he did wrong, so he may have the

opportunity to correct that behavior." *Appellant's Br.* at 22.[6] Father compares this case to *Rickman v. Rickman*, a case in which the trial court denied the father's petition to modify an order that had suspended his parenting time rights without holding a hearing and without offering any explanation for the denial. 993 N.E.2d 1166 (Ind. Ct. App. 2013).[7] Because the trial court did not hold a hearing and did not indicate whether the petition was denied pursuant to Section 31-17-4-2 or whether the court considered the Guidelines, we reversed and remanded for the trial court to provide a written explanation of its reasons for denying the petition. The *Rickman* Court stated, "a factual basis and a finding as to potential endangerment of [the child's] physical health or safety or significant impairment of his emotional development are necessary" for the Appellate Court to appropriately review the trial court's decision. *Id.* at 1169–70.

[15] Father highlights "a factual basis [is] necessary" language from *Rickman* in support of his position that the trial court needed to say more here. *See Appellant's Br.* at 23. For several reasons, we conclude the trial court's order was sufficient.

---

[6] Father essentially invites us to articulate a new standard that goes beyond the requirements of Section 31-17-4-2 and the Guidelines to describe exactly how detailed the required findings must be. *See Appellant's Br.* at 21–22. We decline to adopt Father's proposed standard. One, that is not our role, and two, there is already a vehicle for more specific findings—a request pursuant to Trial Rule 52(A).

[7] As a point of comparison, Father states, "Like in *Rickman*, the Trial Court stripped the Father of his parenting time without a hearing." *Appellant's Br.* at 23. This is a reference to the *ex parte* order, which Father expressly disclaims as an issue on appeal. *See supra* n.3. The trial court's order on appeal was entered after a hearing.

First, Section 31-17-4-2 requires the trial court to "find" the existence of a certain circumstance; it does not require specific "written findings." *Compare* I.C. § 31-17-4-2 *with* I.C. § 31-34-19-10(a) (requiring the court in a child in need of services case to include in the dispositional decree "*written findings and conclusions* upon the record") (emphasis added), and I.C. § 31-37-18-9(a) (requiring written findings when issuing a dispositional decree in a juvenile delinquency case). That is, the plain language of the statute does not require elaboration. *See Arms v. Arms*, 803 N.E.2d 1201, 1212 (Ind. Ct. App. 2004) (observing trial court's decision to limit parenting time "because more extensive visitation or parenting time . . . would be emotionally and psychologically harmful to the child" satisfies the statutory requirement "so long as it is supported by the evidence").

Second, the written explanation required by the Guidelines must state the reason for a deviation but "need not be as formal as Findings of Fact and Conclusions of Law." Ind. Parenting Time G., Preamble C.3, Cmt.

And third, the circumstances of *Rickman* are entirely different than this case. In *Rickman*, there was neither a hearing—and thus no "factual basis"—nor a finding of endangerment or impairment, whereas here, there was *both* a hearing *and* a finding that unrestricted parenting time would cause harm to Child. In *J.M. v. N.M.*, we affirmed a parenting time restriction even without an express finding of endangerment or impairment because evidence was presented at a hearing that would have supported such a finding. 844 N.E.2d 590, 600 (Ind. Ct. App. 2006), *trans. denied*. Again, here, we have both, and the evidence from

the hearing provides ample support for the trial court's order. We also note the trial court gave a detailed explanation from the bench of its reasoning and offered an avenue for Father to regain unrestricted parenting time in as little as sixty days.

[19] The trial court ordered supervised parenting time and found that unsupervised parenting time with Father would cause harm to Child. This finding has support in the record and explains the court's order; this is all that is required. Overall, we conclude the trial court met the requirements of the statute and made a parenting time decision with the best interests of the child at the forefront. The trial court's order is not clearly erroneous.

## Conclusion

[20] The trial court's finding that unsupervised parenting time would cause harm to Child both justifies deviation from the Guidelines and serves as the required finding for a restriction of parenting time. The judgment is affirmed.

[21] Affirmed.

Bailey, J., and Tavitas, J., concur.